**In the Matter of LANE POULTRY OF CAROLINA, INC., Carolina Farms, Inc., Carolina Poultry, Inc., Webster Poultry, Co., Webster Farms, Inc., Clift C. Lane and Dorothy P. Lane, Dexter Processing, Inc., Dexter Farms, Inc., Lane Processing, Inc., Lane Farms, Inc., Modern Feeds of Nacogdoches, Inc., Spring Valley Farms, Inc., Spring Valley Foods, Inc., Cheaha International, Inc., Alacalco, Holly Creek Fryers, Inc., Sunnyside Feeds, Inc., Frank Smith Foods, Inc., Lane Poultry Sales, Inc., Lane Domestic International Sales Corp., Debtors.**

**Bankruptcy Nos. B–82–02012 C–11 to B–82–02031 C–11.**

United States Bankruptcy Court, M.D. North Carolina.

July 30, 1986.

---

Jerry G. Tart, Johnson & Tart, Greensboro, N.C., William B. Sullivan, John M. Packman, Arent, Fox, Kintner, Plotkin & Kahn Washington, D.C., for debtor.

Marc T. McNamee, Craig J. Donaldson, James R. Kelley, Dearborn & Ewing, Nashville, Tenn., W. Fred Williams, Franklin, Tenn., William L. Owen, Gill, Skokos, Simpson, Buford & Owen, P.A., Little Rock, Ark., for Commerce Union Bank.

Richard M. Hutson, II, Mount, White, King, Hutson & Carden, P.A., Durham, N.C., for Consol. Committee of Unsecured Creditors.

## MEMORANDUM OPINION CONCERNING DEBTORS' MOTION FOR SUMMARY JUDGMENT ON APPLICATION OF COMMERCE UNION BANK UNDER § 506(b)

JAMES B. WOLFE, Jr., Bankruptcy Judge.

This matter came on for hearing before this Court on July 2, 1986, in Greensboro, North Carolina, before James B. Wolfe Jr., United States Bankruptcy Judge for the Middle District of North Carolina, upon the Debtors' Motion for Summary Judgment on the Application of Commerce Union Bank ("CUB") for reimbursement of its attorneys' fees and expenses from the Debtors in this proceeding pursuant to Bankruptcy Code § 506(b), 11 U.S.C. § 506(b).

Having considered Debtors' Motion and Brief in support thereof, together with CUB's Response thereto, all of the written and oral evidence presented by the parties, and the argument of counsel, the Court now renders this Memorandum Opinion.

### FINDINGS OF FACT

On November 7, 1982, Debtors herein filed voluntary petitions under Chapter 11 of the Bankruptcy Code. On the petition date, Debtors were indebted to CUB in an amount exceeding $4,000,000.00. This indebtedness was secured by various shares of stock, real estate, plant, and equipment, the value of which exceeded the amount of the indebtedness that it secured, thereby rendering CUB an oversecured creditor.

The following documents constitute CUB's application under § 506(b):

(a) Application For Award of Attorneys' Fees by Commerce Union Bank, filed July 5, 1984 ("CUB Initial Application");

(b) Supplement to Application For Award of Attorneys' Fees By Commerce Union Bank, filed January 24, 1985 ("CUB First Supplement");

(c) Second Supplement to Application For Award of Attorneys' Fees By Commerce Union Bank, filed January 25, 1985 ("CUB Second Supplement");

(d) Third Supplement to Application For Award of Attorneys' Fees By Commerce Union Bank, filed on or about May 30, 1986 ("CUB Third Supplement"); and

(e) Supplemental Brief to Application For Award of Attorneys' Fees By Commerce Union Bank, filed on or about May 30, 1986 ("CUB Supplemental Brief").

Debtors filed Debtors' Response to Creditor Applications Under § 506(b) ("Debtors' Initial Response") on December 5, 1984. The General Objection on Behalf of Consolidated Committee of Unsecured Creditors to § 506(b) Claims was filed on that same date. Debtors filed Debtors' Supplemental Response to Creditor Applications Under § 506(b) on February 5, 1985.

CUB seeks recovery of attorneys' fees under § 506(b) in the amount of $628,079.61. (CUB Initial Application, p. 3.)[1] This amount represents fifteen percent (15%) of the amount of principal and interest that CUB alleges in its Proof of Claim was owed by the Debtors to CUB as of the date of Debtors' petitions. CUB also seeks reimbursement of expenses in the amount of $70,000.00 (CUB Initial Application, p. 3.)

On June 16, 1986, Debtors filed Debtors' Motion For Summary Judgment on Application of Commerce Union Bank Under § 506(b), together with a Brief in support of the Motion. This Motion contends that CUB cannot recover any attorneys' fees pursuant to § 506(b) because there is no formal contract or agreement between CUB and its attorneys obligating CUB to pay attorneys' fees.

Debtors further allege that CUB has justified only $41,199.09 in expenses. The subject of the expenses sought by CUB is addressed by Paragraph 12 of the Consent Order entered by this Court on May 30, 1984, settling Adversary Proceeding No. A–83–0224. Under that provision, Debtors were required to pay the Routh Creditors the sum of $70,000.00 from the additional adequate protection payments due to those creditors under the Consent Order entered in Adversary Proceeding No. A–83–0121.[2] That sum was in turn transferred by the Routh Creditors to CUB in payment of CUB's § 506(b) expenses. Paragraph 12 further provided that, "[t]o the extent that CUB's court-approved expenses incurred on or before the date this Consent Order becomes final are less than $70,000.00, such difference shall be refunded directly to the Routh Creditors." In light of this provision, Debtors' Motion requests the Court to order CUB to refund directly to the Routh Creditors the sum of $28,800.91, which represents the difference between the $70,000.00 previously paid by the Routh Creditors to CUB and the $41,199.09 of expenses that Debtors contend CUB has justified.

CUB filed its Response To Debtors' Motion For Summary Judgment On Application Of Commerce Union Bank Under § 506(b) ("CUB's Response") on or about July 1, 1986. Together with this Response, CUB submitted the Affidavit of Roddy Story, CUB's Senior Vice President.

---

1. CUB's application under § 506(b) incorporates the claims of the following law firms, all of which have served as counsel to CUB in connection with its claims against Debtors in these reorganization proceedings: Dearborn & Ewing, of Nashville, Tennessee; Brooks, Pierce, McLendon, Humphrey & Leonard, of Greensboro, North Carolina; Gill, Skokos, Simpson, Buford & Owen, P.A., of Little Rock, Arkansas; Daily, West, Core, Coffman & Canfield, of Fort Smith, Arkansas; and Allen, Cabe & Lester, of Little Rock, Arkansas. (CUB Initial Application, p. 2.)

2. As defined by the Consent Order, the Routh Creditors are Glenn C. Routh, Gails W. Phillips, Priscilla A. Sanders, James C. Moore, Alan T. Moore, Jerry D. Andrews, Judith P. Templeton, Frederick D. Andrews, and Blanche R. Nall.

On July 2, 1986, the Court considered CUB's claims under § 506(b). The Court addressed the Debtors' Motion For Summary Judgment by considering the arguments of counsel for Debtors and CUB as well as the testimony of three witnesses offered by CUB. The issues before the Court were whether CUB had a formal and binding fee agreement with its attorneys, and whether, as a matter of law, the existence of such an agreement is a necessary prerequisite for recovery under § 506(b). For reasons set out below, this Court holds that a formal and enforceable arrangement must exist between an oversecured creditor and its attorneys before an award of 506(b) fees is granted.

In order for summary judgment to be appropriate under Bankruptcy Rule 7056, the Court must find that there is no material issue of fact in genuine dispute. For purposes of deciding Debtors' Motion For Summary Judgment, the Court assumes the facts to be as contended by CUB, the non-moving party. Those facts are as follows:

First, in CUB's Initial Application, Appendix B, pp. 5–6, ¶ ¶ 5–6, the following admissions are made:

*No contract exists between Commerce Union Bank and its attorneys setting a minimum or maximum hourly rate to be earned by those attorneys in prosecution of the litigation with the Debtors.*

\* \* \* \* \* \*

Because of the amount involved in the proceeding, the complex issues and disputes that existed between the Debtors and Commerce Union Bank, and the likelihood that a court would be required to pass upon the reasonableness of any attorneys' fees awarded in these proceedings, *any prior agreement between Commerce Union Bank and its outside counsel would be useless.*

These admissions strongly suggest that there was no "prior agreement" between CUB and its counsel regarding fees.

Second, the Affidavit of Roddy Story and the testimony at the hearing by CUB's three witnesses, Mr. Story, W. Fred Williams, Esquire, and James R. Kelley, Esquire, all tend to establish that the creditor did not have an obligation to pay its attorneys any specific amount for fees. CUB established at most, assuming all the facts it presented to be true, that it had an oral agreement to pay its attorneys a "reasonable fee" for their services in these reorganization proceedings. Not only was there no agreed-upon hourly rate, but there was also no discussion between CUB and its attorneys establishing any methodology or formula for the determination of any fee, so no bills were ever submitted to CUB by its attorneys. Moreover, evidence presented at the hearing strongly suggested that it was customary, when submitting bills directly to the borrower, to bill the borrower at a rate higher than that which would be charged in cases where the client was billed directly.

## DISCUSSION AND CONCLUSIONS OF LAW

This Court has carefully scrutinized the propriety of CUB's Application, particularly in view of the fact that of the thirty-two (32) secured creditors that have submitted applications under § 506(b) in these reorganization proceedings, CUB is the only one that did not enter into a formal fee agreement with its counsel. Regardless of the reason, in the absence of a fee agreement, this Court feels compelled to hold that CUB cannot recover from the Debtors' estate for attorneys' fees.

Section 506(b) provides that

To the extent that an allowed secured claim is secured by property the value of which, after any recovery under subsection (c) of this section, is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement under which such claim arose.

As this Court has recognized, "§ 506(b) permits oversecured creditors to be *reim-*

*bursed* for any reasonable fees, costs or charges to the extent provided in the pre-petition agreement between the Debtors and the lender." *In re Lane Processing, Inc.*, No. B–82–02020 C–11, slip op. at 6 (Bankr. M.D.N.C. August 5, 1985) (opinion on § 506(b) applications of the Routh and Webster Creditor groups; emphasis in original). In other words, § 506(b) allows oversecured creditors to be compensated only for those attorneys' fees and expenses that they have an actual obligation to pay. This Court has further acknowledged the reimbursement purpose of § 506(b) by stating that *"[o]nce such fees are incurred,* the lender's attorney, on the creditor's behalf, must apply to the Court pursuant to Rule 2016 of the Bankruptcy Rules to be allowed compensation." *In re Lane Processing, Inc.,* slip op. at 6 (emphasis added).

This Court is of the opinion that § 506(b) was designed for the benefit of creditors rather than creditors' attorneys, with the primary focus properly centering on the *reimbursement* nature of the provision. As stated above, this remedy was created to *reimburse* creditors for reasonable and necessary expenses involved in debt collection. In this case, which is among the oldest active cases before this Court, no bills have ever been submitted to CUB by its attorneys for CUB itself to ascertain whether its attorneys' expenses were reasonable and necessary. Instead, the bills and Application were submitted directly to the Court, a procedure which is clearly inappropriate. CUB can produce no formal agreement which plainly sets forth its obligation to pay its attorneys.

Other courts have recognized that § 506(b) provides only for the compensation of actual obligations on the part of a creditor. In the case of *In re American Metals Corp.*, 31 B.R. 229 (Bankr.D.Kan. 1983), the court denied a creditor's request pursuant to § 506(b) for the allowance of a $20,000 termination charge provided for by the underlying security agreement. The court reasoned that the termination charge constituted an impermissible penalty and then went on to hold as follows:

Moreover, this Court is of the view that § 506(b) is limited to *actual* costs, charges or damages. Section 506(b) is an extraordinary remedy for oversecured creditors; and it should not be read so broadly as to allow all purported expenses, whether actual, estimated or illusory.

*So far, no court has allowed anything but actual costs under 506(b).*

31 B.R. at 237 (emphasis added). Similarly, the Bankruptcy Court for the Central District of California has described § 506(b) by stating that it gives a secured creditor "a right to *indemnification* ... for its costs and attorneys' fees." *In re Dominguez*, 51 B.R. 171, 173 (Bankr.C.D.Cal.1985) (emphasis added). Similarly interpreting § 506(b), another court has stated that

[a] contract provision providing for attorney's fees should only be enforceable "to the extent that it is shown that the creditor has been damaged by having to pay, or assume the payment of attorney's fees or other collection expenses." Annot. 17 ALF2d 288 § 8 at 298 (1951).

*In re Banks*, 31 B.R. 173, 178 (Bankr.N.D.Ala.1982) (emphasis added).

The provisions of Bankruptcy Rule 2016(a) reinforce the conclusion that § 506(b) provides only for reimbursement, and not for the payment of fees and expenses not actually incurred. That rule provides in pertinent part as follows:

an application for compensation shall include a statement as to what payments *have theretofore been made or promised* to the applicant for services rendered or to be rendered in any capacity whatsoever in connection with the case, [and] the source of the compensation so *paid or promised....* The requirements of this subdivision shall apply to an application for compensation for services rendered by an attorney or accountant even though the application is filed by a creditor or other person.

Thus, Bankruptcy Rule 2016(a) requires not only a detailed statement of the services

rendered, time expended, expenses incurred, and amounts requested, but also a statement of what payments have actually been made or promised in connection with those services and expenses. Since Rule 2016(a) expressly applies to any application by a creditor under § 506(b), the inclusion of this requirement indicates unmistakably that § 506(b) is intended to allow compensation for only those fee and expense obligations that a secured creditor has actually incurred.

▮▮▮▮ Moreover, the contract between the creditor and its attorneys serves as a mere starting point for a court's determination of reasonable § 506(b) fee awards, as a court may award less than the amount contracted for between the parties. For example, the Bankruptcy Court for the Southern District of New York has stated that

[t]he requirement of Code § 506(b) that fees be "reasonable" imposes a limitation on the amount of *contractually agreed upon attorneys' fees* which may properly be awarded by the Bankruptcy Court in addition to any limitation or consideration that would be placed under state law.

*In re Nicfur-Cruz Realty Corp.*, 50 B.R. 162, 167 (Bankr.S.D.N.Y.1985) (emphasis added). Similarly, another court has stated that

[a]s between the attorney and client, *the fee is a contractual matter between the two parties.* Such fee may be subject to a variation where a reasonable standard is applied in cases where creditors' and debtors' funds in these estates are being disbursed to the payment of secured creditors' claims.

*In re Harman Supermarket*, 44 B.R. 918 at 921 (Bankr.Va.1984) (emphasis added). *Accord In re Nordmann*, 56 B.R. 634, 636 n. 4 (Bankr.D.S.D.1986) ( " [u]nder Section 506(b) the 'reasonable' fee requirement is an additional limitation to any *contractually agreed* amount" ) (citing *In re Nicfur-Cruz Realty Corp.* 50 B.R. at 167; emphasis added)). Obviously, in the absence of any such contract, there can be no reason-able fee, thereby rendering any award under § 506(b) inappropriate.

There are strong policy considerations that support this Court's view of § 506(b). Economy to the estate is a central goal of bankruptcy law. That goal is best served by requiring a pre-existing fee obligation as the starting point for determining a "reasonable" fee under § 506(b). The requirement that creditors and their attorneys enter a prior fee agreement deters creditors' attorneys from neglecting to draft a binding fee agreement with the hope that the Court will later define "reasonable fee" in more generous and profitable terms than those consented to by the creditor/client. Debtors should not have to pay creditors more than the creditors' attorneys would have charged their clients in the absence of § 506(b). The law was not intended to create a windfall to creditors or their attorneys.

With respect to the $70,000 worth of expenses covered by CUB's application, Debtors contend that CUB has justified only $41,199.09. CUB contends that there are factual disputes concerning expenses that preclude summary judgment. In presenting their arguments and evidence at the July 2, 1986, hearing, neither Debtors' counsel nor CUB's counsel specifically addressed the expenses issue. At a time to be determined, therefore, the Court will schedule a separate hearing on that issue. The Court further directs that the Clerk of this Court is to notify the Routh Creditors of that hearing and to inform them that as a party in interest, they will be allowed to participate in it.

IT IS, THEREFORE, ORDERED, ADJUDGED AND DECREED that Debtors' Motion For Summary Judgment is granted insofar as it pertains to the attorneys' fees for which CUB seeks reimbursement, to wit, that CUB is to recover no attorneys' fees pursuant to § 506(b); and it is further

ORDERED that when the Court sets the hearing on the issue of the expenses for which CUB seeks reimbursement, the Clerk of this Court will promptly notify the

Routh Creditors of that hearing and of their right to participate in it.