In re **KROH BROTHERS DEVELOP-
MENT COMPANY, Kroh Brothers Re-
alty Company, 8880 Ward Parkway As-
sociates, Kroh Investments I, Inc.,
Debtors.**

Nos. 87–00640–1–11, 87–00641–1–11,
87–00643–1–11 and 87–01263–1–11.

United States Bankruptcy Court,
W.D. Missouri.

Aug. 9, 1988.

See also, Bkrtcy., 86 B.R. 186.

Paul Hoffman, Kansas City, Mo., and
Mark Lieberman, Rosenthal & Schanfield,
Chicago, Ill., for Mut. Benefit Life Ins. Co.

James E. Bird, Polsinelli, White & Varde-
man, Kansas City, Mo., and Cory Lipoff,
Nachman, Munitz, Sweig, Ltd., Chicago,
Ill., for debtor Entities.

Thomas Kiriakos, Mayer, Brown & Platt,
Chicago, Ill., for Unsecured Creditor's
Committee.

Lloyd Palans, Gallap, Johnson & Newman, St. Louis, Mo., for Cowen Interests.

### ORDER ON MUTUAL BENEFIT LIFE INSURANCE COMPANY'S MOTION FOR PAYMENT OF PREPAYMENT PREMIUM AND ATTORNEY FEES AS SECURED CLAIM

KAREN M. SEE, Bankruptcy Judge.

Mutual Benefit Life Insurance Company (MBL) filed a Motion for Allowance of Interest, Fees, Costs and Other Charges on Secured Claim. The motion has been partially ruled by previous orders as to MBL's request for prepetition and postpetition interest and appraiser's fees. The remaining questions are whether MBL is entitled to allowance of a prepayment penalty as a secured claim pursuant to 11 U.S.C. § 506, and whether and in what amount MBL is entitled to attorney fees. The parties have argued and briefed the issues and the matter is now ready for determination. This court has jurisdiction pursuant to 28 U.S.C. § 157(b)(2)(B). For the reasons set forth in this opinion the claim for payment of the prepayment penalty is denied and the claim for attorney fees is partially allowed.

### I. Allowance of Prepayment Penalty

#### A. Facts

The parties objecting to allowance of the prepayment penalty as a secured claim are Kroh Brothers Development Company (KBDC); 8880 Ward Parkway Associates, (Debtor); Kroh Brothers Realty Company (KBRC); Kroh Investments I, Inc. (Investments); the KBDC Unsecured Creditors' Committee; and Cowen 8880 Investors Company (Cowen 8880) and one of its general partners, Cowen & Company (together, the "Cowen Interests"). The following facts are either of record or uncontested unless otherwise stated. Other relevant facts are set forth later in the opinion.

Debtor Associates is a Missouri limited partnership. Investments, a wholly owned subsidiary of KBDC, is the sole general partner of debtor, and Cowen 8880 is the sole limited partner. On December 23, 1983, debtor executed a promissory note in the amount of $9,500,000 in favor of MBL. The note was payable over a 10–year term with an interest rate of 13% per annum. The note was secured by a deed of trust on a five-story office building at 8880 Ward Parkway, in Kansas City, Missouri and the ground on which the building sits (together, the "mortgaged property"). Debtor owned the building. KBDC owned the ground. The note is a non-recourse note, there is no guaranty or other security for it other than the mortgaged property, and there are no late charges or a default rate of interest. No one contests, and the court has previously found, that MBL holds a valid, perfected, prior lien on the mortgaged property.

On November 1, 1986, debtor defaulted on the note. Subsequently, on February 13, 1987, debtor filed a Chapter 11 petition. Shortly thereafter, on February 24, MBL filed a motion for sequestration and accounting of debtor's cash collateral and to prohibit debtor from using cash collateral. On March 16, the court entered the first of several orders granting debtors use of cash collateral subject to further order of the court. On March 27, MBL filed a motion for termination of the automatic stay or alternatively, appointment of a trustee. On May 29, the court ordered, by agreement of the parties, temporary adequate protection payments of $102,917 per month.

After notice and orders of this court, the property was sold at public auction conducted by this court on August 25, 1987 for $11,750,000. The court directed that the sale close on September 24 and authorized payment of the MBL's principal of $9,500,-000 and prepetition interest of $460,164.16. Shortly before the sale, MBL filed a motion seeking from the sale proceeds payment as part of its secured claim postpetition interest, attorney fees, appraiser's costs and a prepayment penalty.[1] Other applications

---

1. MBL's motion referred to the sum claimed as a "yield maintenance factor." However, in subsequent briefing MBL and other parties referred to it as a prepayment penalty, liquidated damages and prepayment premium. The terms are used interchangeably in this opinion but for

for payment from the sale proceeds have been filed by various mechanics lienors and KBDC, which requested payment for its portion of the mortgaged property, the ground, that was sold. According to MBL's brief and statements in oral argument, the net proceeds of the sale, after accounting for all real estate taxes, were approximately $11,400,000.00. MBL calculated its prepayment penalty as in excess of $2,173,000 as of October 13, 1987. If the prepayment provision is allowed according to its terms, MBL will be paid not only its entire principal and interest, but with the prepayment premium it will also receive all the remaining sale proceeds which constitute the entire estate, and no other creditor will receive any distribution.

### B. Discussion and Conclusions

The objecting parties present five arguments in support of their position: (1) the prepayment penalty clause in the deed of trust is ambiguous and should be construed against MBL, and the prepayment penalty should not, therefore, be payable at all; (2) the note has been accelerated, either prepetition by MBL or postpetition by MBL's motion for relief from the automatic stay and MBL has, therefore, waived its right to the prepayment penalty; (3) the prepayment penalty is a claim for unmatured interest and therefore is not enforceable under § 502(b)(2); (4) the prepayment penalty is an unreasonable charge under § 506(b) because it is an unenforceable liquidated damages clause under state law; and (5) the equities support disallowance of MBL's prepayment penalty as a secured claim. Because the court finds the prepayment penalty is unenforceable under either Missouri law or § 506 it is not necessary to address the remaining issues.

■ A secured claim must include "any reasonable fees, costs, or charges" provided for in the agreement between the parties to the extent the claim is secured. 11 U.S.C. 506(b). The objecting parties contend, and this court agrees, that the court should compare prepayment penalties and other similar charges to liquidated dam-

ease of reference, the sum claimed will be re-

ages clauses. *See e.g.,* *In Re United Merchants and Manufacturers, Inc.,* 674 F.2d 134 (2nd Cir.1982); *In re American Metals Corp.,* 31 B.R. 229 (Bankr.D.Kan.1983). If the clause is valid and enforceable as a liquidated damages clause under state law, then it is also valid and enforceable in bankruptcy. *United Merchants,* 674 F.2d at 144[14]. *See also In re O.P.M. Leasing Services, Inc. (Hassett v. Revlon, Inc.),* 23 B.R. 104, 111[2] (Bankr.S.D.N.Y.1982). If the clause is enforceable under state law it may also be considered a "reasonable charge" pursuant to § 506(b). *In re Skyler Ridge,* 80 B.R. 500, 507[4] (Bankr.C.D. Cal.1987).

The note and deed of trust provide that Missouri law governs construction of the instruments. Missouri enforces liquidated damages clauses if the amount fixed as damages is a reasonable forecast of just compensation for the harm that is caused by the breach and if the harm caused by the breach is incapable or very difficult of accurate estimation. *Grand Bissell Towers, Inc. v. Joan Gagnon Enterprises, Inc.,* 657 S.W.2d 378, 379[2] (Mo.App.1983). If these two factors are not met, the clause is considered a penalty and is unenforceable. 657 S.W.2d at 379[1]. The person claiming under the liquidated damages clause must show at least some actual harm or damage or the liquidated damages clause is unenforceable. When the amount of liquidated damages is greatly disproportionate to the actual damages courts construe the clause as a penalty but allow recovery of damages actually incurred. *Plymouth Securities Company v. Johnson,* 335 S.W.2d 142, 152[9] (Mo.1960).

In determining whether a clause is an enforceable liquidated damages clause or a penalty clause, Missouri courts also look to the intent of the parties. *Jennings v. First National Bank of Kansas City,* 30 S.W.2d 1049, 1052 [6] (Mo.App.1930). However, if the sum agreed upon is "unreasonable, wholly disproportionate to the amount of the probable damages and calculated to work oppression" then the liquidated dam-

ferred to generally as a prepayment penalty.

ages clause is a penalty regardless of the intent of the parties. 30 S.W.2d at 1052[9].

A recent decision directly on point is *In re Skyler Ridge*, 80 B.R. 500 (Bankr.C.D. Cal.1987). In *Skyler* the court found that the creditor's secured claim did not include a prepayment penalty because the prepayment provision was unenforceable under both state law and § 506(b) requiring that liquidated damages be reasonable. In *Skyler* Kansas law governed. Kansas law, like Missouri law, provides that liquidated damages are enforceable if the amount specified is reasonable and damages are difficult to ascertain. 80 B.R. at 504. Because the debtor did not contest the difficulty of ascertaining damages the court discussed only the reasonableness issue.

The note in *Skyler* provided a contract rate of 10.75%. According to the prepayment provision the prepayment penalty was calculated as follows:

> ... the greater of (a) the product obtained by multiplying (i) the difference obtained by subtracting from [10.75%] the yield rate of [11½%] U.S. Treasury Notes due November, 1995 ... and (ii) the number of whole and fractional years remaining between the prepayment date and the scheduled maturity date of this Note and (iii) the prepaid principal amount or (b) [1%] of the prepaid principal amount.

80 B.R. at 502.

The court analyzed the reasonableness of the prepayment penalty provision in view of the traditional purpose of such clauses, which "is to assure that the lender will receive the contractual rate of return for the life of the loan, or the equivalent thereof." 80 B.R. at 504. Under this standard the prepayment provision was found unreasonable for two reasons.

First, the creditor in *Skyler Ridge* typically invested in first mortgages. The court noted that the U.S. Treasury rate is systematically lower than interest rates for first mortgages. The court found this resulted in a windfall to the creditor upon reinvestment: "[A] drop of one percent in the long-term mortgage rate would result in almost a triple recovery to [the creditor];

a drop of two percent would result in almost a double recovery. Even a drop of six percent ... would still result in overcompensation ... by 20 to 30 percent." 80 B.R. at 505. The court indicated that if the parties had provided a means of adjusting the formula to bring the rate up to that of the creditor's rate of reinvestment the prepayment provision would not have been unreasonable. However, they did not and the court found that feature of the formula unreasonable. *Id.*

Second, the prepayment formula did not discount the payment under the prepayment formula to present value. This allowed the creditor "to recover its entire lost interest at the time of prepayment, rather than over the life of the loan." 80 B.R. at 505. The court found that feature of the formula unreasonable because the time value of money was not recognized. *Id.*

■ The MBL prepayment formula is identical to the formula used by the parties in *Skyler Ridge*. The note provides that the prepayment penalty is equal to

> "[T]he difference between the interest rate on [the] loan and the then current yield on the date of prepayment, of the U.S. Treasury Note closest in maturity to the remaining term of the loan, times the loan amount times the number of years or fraction thereof of the remaining term of the loan.... There shall be no discount if such Treasury Note yield is above the interest rate of this loan."

Here, the contract rate of interest is 13% and the U.S. Treasury rate is 9.34%. At the latter rate the prepayment penalty, as calculated by MBL, is in excess of $2,173,000. MBL's actual rate of reinvestment at the time of prepayment was between 10% and 10½% (communicated to the court by letter.) Using MBL's figure of 6.25 years for the remaining term of the loan and assuming a reinvestment rate of interest of 10½% the prepayment charge would be $1,484,375. If the reinvestment rate was 10% the figure would be $1,781,250. For each half-point difference in the treasury rate and MBL's reinvestment rate MBL gains between $300,000 and $400,000.

Moreover, there is no discount to present value, which would further reduce MBL's claim. As the court in *Skyler* stated, the absence of discounting allows MBL "to recover its entire lost interest at the time of prepayment, rather than over the life of the loan." 80 B.R. at 505. The terms of the prepayment premium provision were drafted by MBL and therefore, must be strictly construed against MBL. Here, the failure to provide a discount to present value, which results in a huge windfall to MBL, is alone sufficient to render the provision unreasonable and unenforceable.

In conclusion, for a liquidated damages clause to be enforced under Missouri law the amount fixed as damages must be a reasonable forecast of compensation for the harm caused by the breach. Additionally, if the sum agreed upon is unreasonable, disproportionate to the amount of probable damages and oppressive then the liquidated damages clause is construed as a penalty. For the reasons set forth above the court finds that under both Missouri law and the *Skyler Ridge* decision the prepayment penalty is an unreasonable forecast of the damages, if any, caused by the payment of the note at the time the mortgaged property was sold. The court further finds that the sum set forth in the prepayment penalty clause is unreasonable, disproportionate to the amount of probable damages and oppressive to debtor. Because the prepayment clause does not meet the standards for a liquidated damages clause under Missouri law, the court finds that it is an unreasonable penalty. As such, it is unenforceable under state law and therefore unenforceable in this court.

Additionally, the prepayment penalty is an unreasonable charge pursuant to 11 U.S.C. § 506(b) for reasons set forth above and for the following reasons. First, the prepayment penalty clause does not provide for a discount to the debtor if the U.S. Treasury rate is higher than the contract rate at the time of prepayment. Thus if the loan was repaid when interest rates were higher than the contract rate MBL could reinvest the funds at a higher rate with no obligation to reduce the amount to be repaid. This could clearly result in a windfall to MBL and if debtor was required to refinance at a higher rate the absence of a discount would be detrimental to debtor. Such a result adds to the unreasonableness of the prepayment clause.

Second, the court agrees with the finding in *In re American Metals Corp.*, 31 B.R. 229 (Bankr.D.Kan.1983), that § 506(b) should be construed to provide only for actual costs, charges and fees. In *American Metals*, 31 B.R. at 237, the court stated:

> [T]his Court is of the view that *§ 506(b) is limited to actual costs, charges or damages.* Section 506(b) is an extraordinary remedy for oversecured creditors; and it should not be read so broadly as to allow all purported expenses, whether actual, estimated or illusory.
>
> *So far, no court has allowed anything but actual costs under § 506(b).* That is not to say a liquidated damage clause should not be given credence in allowing costs or damages under § 506(b). But where, as here, the creditor failed to show that it was a liquidated damage clause rather than a penalty, the Court should disallow such costs under § 506(b) [emphasis added].

MBL has not presented any evidence concerning its *actual* damages.

Third, a number of courts have indicated that postpetition interest should be allowed only until the principal amount is repaid. *See generally 3 Collier's on Bankruptcy* ¶ 506.05, p. 506–42 (15th Ed.1987) ("postpetition interest may accrue until payment of a secured claim or the effective date of a plan"). For example, in *Matter of Romano*, 51 B.R. 813 (Bankr.M.D.Fla.1985), the court allowed postpetition interest to accrue on an unsatisfied judgment only until the claim was satisfied. 51 B.R. at 815[5]. *In re Schildknecht* held that "[i]nterest charges against debtors should be tolled as of the time the principal is retired in full." 55 B.R. 352, 354 [2] (Bankr.W.D.Ky.1985). One court set the date for payment of postpetition interest to an oversecured creditor at the date the property was sold. *In re Chateau Royale, Ltd.*, 6 B.R. 8, 13 [5] (Bankr.N.D.Fla.1980).

Finally, none of the decisions reviewed by this court allowed a charge of 25% of the principal amount. In *In re 360 Inns Ltd.*, 76 B.R. 573 (Bankr.N.D.Tex.1987) the court refused to confirm a solvent debtor's plan of reorganization unless the plan included treatment of the creditor's prepayment penalty of 10% of prepaid principal. 76 B.R. at 576. The *United Merchants* decision involved a prepayment penalty of approximately 10%, 674 F.2d at 140, as did the decision in *In re Dalessio*, 74 B.R. 721, 724[5] (9th Cir.BAP 1987).

In its brief and at oral argument MBL relied primarily on decisions enforcing prepayment penalties, two of which enforced a prepayment penalty in bankruptcy. Those decisions are either distinguishable or not relevant to this court's decision. First, the prepayment penalty provision in *Teachers Insurance & Annuity Association of America v. Butler*, 626 F.Supp. 1229 (S.D. N.Y.1986), provided for a discount of the prepayment premium to present value. The *Skyler Ridge* court pointed to this feature of the *Teachers* prepayment premium provision in reaching its decision that the absence of such a discount made the provision a penalty under state law. *See* 80 B.R. at 505[2].

Second, the *United Merchants* decision involved a prepayment penalty of 10% of the principal amount that was allowed as an unsecured claim. 674 F.2d 134. The portion of the opinion discussing the general enforceability of prepayment penalties in bankruptcy is irrelevant here because the court has not addressed that specific issue and whether or not such clauses are generally enforceable in bankruptcy is irrelevant if they are unenforceable for other reasons.

Third, MBL relies on *In re 360 Inns*, 76 B.R. 573 (Bankr.N.D.Tex.1987). There is no discussion in that decision of the validity of the prepayment penalty under state law and the court's statement that "the prepayment penalty may well have been an allowed secured claim under § 506(b) ...," 76 B.R. at 576, was made without citation to authority and is also dicta. Moreover, that decision involved a solvent debtor with an equity position in its primary asset in

excess of $1,000,000. MBL has not contested debtor's insolvency in this proceeding nor does anyone contend that debtor has a significant equity position in the property.

For these reasons the court concludes the authority is persuasive for the proposition that § 506(b) should be construed narrowly. There is no precedent allowing a prepayment penalty as a secured claim while there is precedent indicating first, that any postpetition interest allowed should include only interest accrued to the date of payment of principal and second, that only actual costs and fees should be allowed as secured claims under § 506(b). Additionally, under a guideline established by the cases as to what constitutes a reasonable charge under § 506(b), at most a 10% prepayment charge could be considered within the realm of reasonable. A 25% charge under this standard is clearly unreasonable. Thus, even if the penalty is enforceable under state law as a valid liquidated damages clause, the court holds that the prepayment penalty is an unreasonable charge within the meaning of § 506(b) and as such is unenforceable.

## II. MBL's Request for Attorney Fees

### A. Facts

In addition to its prepayment penalty, MBL seeks attorney fees, which as of July 31, 1987 were $85,165.91. The fees represent in excess of 900 hours billed by MBL's counsel, local counsel, and counsels' staff. MBL asserts it is entitled to the fees as part of its secured claim for work done to protect and preserve MBL's lien on and interest in the mortgaged property. The Cowen Interests have objected to the fees.

At the hearing on the motion for attorney fees the court directed counsel to resubmit their time schedules including only those items relating solely to this matter and excluding all other items. The court also gave MBL leave to file affidavits further explaining the fees requested. Local counsel for MBL filed an affidavit and supplemental affidavit stating generally that all fees charged were reasonably related to

representation of MBL as to the mortgaged property and were for services rendered in connection with protecting MBL's interests under the note and loan documents. The affidavits point out that MBL was in fact, paid principal, interest and postpetition interest owing on the note. They also state that certain charges that appear unrelated to the mortgaged property are actually allocations of work done on this matter and other matters in which MBL is involved in these Kroh related cases. Thus, as to those charges, only a portion of the entire charge for work done is allocated to this matter. The court's records indicate that amended time schedules were not filed.

Additionally, the court notes facts apparent from its own records. On February 24, MBL filed a motion seeking sequestration of debtor's cash collateral and to prohibit debtor from using the cash collateral. On March 16, this court entered the first in a series of orders granting debtor temporary use of cash collateral subject to further order of court. On March 27, MBL filed a motion seeking termination of the automatic stay or alternatively, appointment of a trustee. On May 29, the court ordered, upon agreement of the parties, temporary adequate protection payments of $102,917 per month. The motions on cash collateral and lift of stay, although set for hearing a number of times, were never the subject of an evidentiary hearing due to the prompt sale of the mortgaged property. Thus, this case was largely uncontested until MBL filed the present motion.

### B. Discussion and Conclusions

The Cowen Interests object to payment of attorney fees as part of MBL's secured claim on two grounds: first, that attorney fees are not provided for in the note; and second, that they are excessive and unreasonable. In support of the first objection, the Cowen Interests assert that collection of the note did not occur by legal or judicial means and therefore, attorney fees are not covered under the note. The Cowen Interests agree that the note provides for attorney fees if the note is "placed in the hands of an attorney for collection or if collected through the bankruptcy court, or by any other legal or judicial proceeding." Their argument focuses on whether the note was collected by a legal or judicial proceeding and asserts that a motion to lift the automatic stay not only is not such a "legal or judicial proceeding" but that attorney fees cannot be recovered for a creditor's representation in a relief from stay proceeding.

■ It is correct that attorney fees cannot be recovered pursuant to § 506(b) unless they are provided for under the terms of the contract between the debtor and creditor. 11 U.S.C. § 506(b). However, the Cowen Interest's argument overlooks the fact that, in addition to collection by legal and judicial proceedings, the note provides for attorney fees if collected "through the bankruptcy courts." Here, absent a lift of stay, this court was the only appropriate forum in which MBL could protect its interest in the mortgaged property and assert its claims to the proceeds of sale of that property. The fact that a lift of stay was never obtained so that MBL could pursue other legal or judicial methods of collection should not prevent it from recovering its attorney fees when the amount was collected through bankruptcy proceedings. The Cowen Interests cite no authority contrary to this proposition and MBL did obtain payment of the principal, interest, postpetition interest and appraiser's fees pursuant to proceedings within the bankruptcy court. Accordingly, the court finds that the portion of the note providing for payment of attorneys' fees is not ambiguous and clearly provides for payment of the costs of collection when collection occurs in bankruptcy. The question then becomes whether the fees requested are within the scope of collection efforts properly reimbursed under § 506(b).

■ Reasonable fees are those necessary to preserve the value of the creditor's security interest as reflected in the security documents and may include seeking adequate protection and participation in the bankruptcy proceeding until the collateral is sold, a plan is confirmed or the case is converted or dismissed. *Matter of Nicfur-*

*Cruz Realty Corp.*, 50 B.R. 162, 167–168 (Bankr.S.D.N.Y.1985). It is inherently unreasonable, however, to seek reimbursement for fees "that are not cost justified either by the economics of the situation or necessary to preservation of the creditor's interest in light of the legal issues involved." 50 B.R. at 169[13]. Additionally, the court has broad discretion in determining the amount of attorney fees to be awarded, *Matter of Scarboro (ITT Industrial Credit Co. v. Scarboro)*, 13 B.R. 439, 443[5] (M.D.Ga.1981), and may award less than the amount contracted for between the parties. *In re LeMarquis Associates (Pastatiempo Properties v. LeMarquis Associates)*, 65 B.R. 719, 750 (Bankr.E.D.Cal. 1986). *See also Matter of Lane Poultry of Carolina, Inc.*, 63 B.R. 745, 749 (Bankr.M. D.N.C.1986).

■■■ A review of these proceedings leads this court to conclude that certain legal action was necessary on the part of MBL to protect its security interest. Such action includes work done on the motions for lift of stay and to protect cash collateral, the negotiations on the adequate protection and cash collateral settlements, and work done toward protecting MBL's interests during sale negotiations and closing, including enforcing its rights under the loan documents. As previously stated, MBL has collected its principal, interest, postpetition interest and appraiser's fees and also obtained adequate protection. No one has ever asserted that debtor had sufficient equity in the mortgaged property to make MBL's actions seem frivolous or otherwise without merit.

However, after review of the time sheets in light of these necessary actions the court finds the bulk of the fees charged are for work apparently unrelated to any of the above matters or hours that were excessive. There is occasional reference to attendance at hearings related to these matters or other references to work relating to the mortgaged property. Generally, though, it is impossible to tell how the items in the time schedules relate to the work necessary to the protection of MBL's interest in the mortgaged property. Counsel's affidavits did not clarify the necessity of the work done for the requested fees and expenses. Moreover, having observed the proceedings in this case, which were largely uncontested and resulted in a very early sale of the property, and having observed the work performed by all the attorneys involved, the court finds that attorney fees of $85,165.91 are grossly excessive and far out of the range of the realm of reasonable for the work that was done. Over 900 hours for attorneys and staff were charged in the fee applications. In Kansas City, 1,800 hours per year is within the normal range of billable hours for an attorney. Thus, the hours charged are equivalent to six months of an attorney's work on this matter alone. That amount of work on the matters concerning protection of MBL's interest in the secured property is unreasonable in this essentially uncontested case. It is specifically noted that in this uncontested case which proceeded smoothly to an early sale, enormous fees are included for other work on the entire set of Kroh Brothers-related bankruptcies, including a substantial amount of work which was simply monitoring of proceedings. Time spent generally on a case and monitoring proceedings is not compensable as a secured claim. *See e.g. In re Berry Estates, Inc.*, 47 B.R. 1004, 1008 (S.D.N.Y. 1985). However, even if it were compensable, the fees sought for time spent generally on Kroh Brothers cases and for routine monitoring work is without basis and is unreasonable. The court notes that MBL has been involved in several other substantial matters in the Kroh Brothers cases, yet it appears that a large portion of the general work and monitoring time is charged to this particular case for payment as part of a secured claim under § 506(b).

MBL had the burden of proving the reasonableness of the attorney fees it seeks to recover as part of its secured claim. Because "every dollar expended on legal fees results in a dollar less that is available for distribution to the creditors," the applicant's burden is not to be taken lightly. *In Re Pettibone Corp.*, 74 B.R. 293, 299[4,5] (Bankr.N.D.Ill.1987). MBL failed to show that all or even a substantial part of the

$85,165.91 in fees and expenses were necessary to protect MBL's security interest in the property. The court therefore finds that the fees and expenses not relating to the necessary matters discussed above are unreasonable. The court is entitled to serve as its own expert in the matter of attorney fees. *Pettibone,* 74 B.R. at 300[6]. After review of the fee applications submitted by counsel and local counsel, and review of the entire proceedings in this case, the court finds that total attorney fees in the amount of $10,000 are reasonable under the circumstances.

For the reasons set forth above, it is

ORDERED that MBL's motion for allowance of secured claim is denied as to the portion of the claim for payment of the prepayment penalty. It is further

ORDERED that MBL's motion for allowance of secured claim for payment of attorney fees is allowed in the amount of $10,000.