**In re LAPPIN ELECTRIC COMPANY, INC., Debtor.**

**Patrick K. Noonan, Trustee in Bankruptcy for Lappin Electric Company, Inc., Plaintiff,**

**v.**

**Fremont Financial, Defendant.**

**Bankruptcy No. 97–26130.**
**Adversary No. 99–2204.**

United States Bankruptcy Court,
E.D. Wisconsin.

Feb. 29, 2000.

William A. Rinehart, Milwaukee, WI, for Plaintiff or Petitioner.

Andrew R. Cardonick and Gerald Munitz, Chicago, IL, for Defendant or Respondent.

## MEMORANDUM DECISION ON MOTIONS FOR SUMMARY JUDGMENT

M. DEE McGARITY, Bankruptcy Judge.

The chapter 7 trustee filed this adversary proceeding against the debtor's oversecured lender, Fremont Financial, on the grounds that the early termination fee provided for in the parties' loan agreement is an unreasonable charge under 11 U.S.C. § 506(b). Both parties have filed motions for summary judgment. The trustee contends that the early termination fee of $225,000 paid by the purchaser of Lappin's assets to Fremont Financial, is a voidable transfer. Fremont claims that the liquidated damages provision of the loan agreement is enforceable under Illinois law, which applies to this agreement, and under 11 U.S.C. § 506(b).

This court has jurisdiction pursuant to 28 U.S.C. § 1334, and this is a core proceeding under 28 U.S.C. § 157(b)(2). Although this is an adversary proceeding to recover money for the estate, the substance of the issue relates to the amount and validity of the creditor's claim, which was paid during the pendency of the case.

## FACTS

An involuntary chapter 7 petition was filed against Lappin Electric Company on June 20, 1997. Proceedings were suspended by this court on June 23, 1997, to allow a sale of the company's assets to Consolidated Electrical Distributors, Inc. This sale had been negotiated by the debtor prepetition and was to be subject to subsequent review by the trustee. From the proceeds of the sale, Fremont Financial was paid its secured claim in full—over $4 million, including over $29,000 in accrued interest, over $16,000 in fees and expenses, and $225,000 for a prepayment fee. Both parties agreed that the material facts are not in dispute and filed cross motions for summary judgment with supporting affidavits, exhibits, and briefs. The court is likewise satisfied that there are no material facts in dispute, and this case is appropriate for summary judgment. Fremont filed an affidavit purporting to demonstrate that it would have substantial actual damages for prepayment of the debt, but as both sides agree that the only amount in dispute is the contract amount paid, it is apparently not intended to put facts in dispute.

Pursuant to the Loan and Security Agreement between Lappin and Fremont, Fremont agreed to make revolving loans to Lappin up to an "Advance Limit" of $7,500,000. The term of the loan agreement was for three years from March 27, 1997. If either party terminated the agreement prior to the three year term, Fremont was entitled to include an early termination fee in the obligations owed to it. Because of the sale, the agreement was terminated by the debtor approximately three months into its term. The agreement provided the following early termination clause:

> Borrowers, subject to the payment of the fee described below, may terminate this Agreement other than at the end of the then current Term by giving Fremont prior written notice of its intention to effect an early termination of this Agreement so long as at such time STR Investment Co., a Wisconsin general partnership ("STR") pays in full, in cash, all of its obligations owing to Fremont pursuant to that certain $500,000 Secured Promissory Note of even date herewith executed by STR in favor of Fremont (the "STR Note"). Fremont may terminate this Agreement at any time upon or after the occurrence of an Event of Default. In view of the impracticability and extreme difficulty of ascertaining actual damages and by mutual agreement of the parties as to a reasonable calculation of Fremont's lost profits as a result of an early termination of this Agreement, in either of the instances described in the preceding two sentences, Borrowers shall pay to Fremont, upon the effective date of such early termination and in addition to all other Obligations, an early termination fee (the "Early Termination Fee") in an amount equal to: (a) three percent (3.0%) of the Advance Limit if such termination occurs at any time during the first year of the initial Term; (b) two percent (2.0%) of the Advance Limit if such termination occurs at any time during the second year of the initial Term; and (c) one percent (1.0%) of the Advance Limit if such termination occurs during the third year of the initial Term or during any renewal Term. The Early Termination Fee shall be presumed to be the amount of damages sustained by Fremont as the result of the early termination and each Borrower agrees that it is reasonable under the circumstances currently existing. The Early Termination Fee shall be deemed included in the Obligations. Notwithstanding anything herein to the contrary, if and to the extent the Early Termination Fee constitutes interest under applicable law, the Early Termination Fee, when added to all other interest contracted for, charged or received under this Agreement or any other Loan Documents, shall not exceed, and shall be limited to an amount which constitutes,

interest at the maximum lawful rate of interest allowable under applicable law. Loan and Security Agreement § 3.2.

## ARGUMENTS

The trustee contends that the $225,000 termination fee paid to Fremont was unreasonably large and thus void and unenforceable as a liquidated damages clause. The trustee argues, among other things, the termination fee is not a reasonable interest, fee or cost allowance under § 506(b). Because Fremont has no actual damages resulting from the prepayment of the loan, the amount should be eliminated or reduced. The trustee relies upon two cases, *In re A.J. Lane & Co.*, 113 B.R. 821 (Bankr.D.Mass.1990), and *In re Maywood, Inc.*, 210 B.R. 91 (Bankr.N.D.Tex.1997), to support his argument.

Fremont argues that early termination fees are customary provisions in lending agreements and allowable in bankruptcy cases. *See In re United Merchants and Mfrs., Inc.*, 674 F.2d 134 (2d Cir.1982); *In re Direct Transit, Inc.*, 226 B.R. 198 (8th Cir. BAP 1998); *In re Anchor Resolution Corp.*, 221 B.R. 330 (Bankr.D.Del.1998); *In re Outdoor Sports Headquarters, Inc.*, 161 B.R. 414 (Bankr.S.D.Ohio 1993). Fremont further contends that the fee is reasonable in this case under both state law and 11 U.S.C. § 506(b).

## ANALYSIS

■ This court is persuaded that it should apply a two prong approach in determining the reasonableness of a termination fee; that is, the provision in the loan agreement must be valid under state law, and it must also be a reasonable charge under § 506(b). *E.g., In re Kroh Bros. Dev. Co.*, 88 B.R. 997 (Bankr. W.D.Mo.1988). If it were not enforceable under applicable state law, it would be subject to disallowance under 11 U.S.C. § 502(b)(1). If it were enforceable under

state law but nevertheless unreasonable, it would be subject to disallowance under 11 U.S.C. § 506(b). *See, e.g., Anchor Resolution Corp.*, 221 B.R. at 340; *In re Morse Tool, Inc.*, 87 B.R. 745, 748 (Bankr.D.Mass. 1988). The creditor bears the ultimate burden of proving its claim. *In re Schaumburg Hotel Owner Ltd. Partnership*, 97 B.R. 943, 950 (Bankr.N.D.Ill.1989).

■ The bankruptcy court in *Schaumburg* applied Illinois law, which is applicable to this case,[1] when it determined:

> A liquidated damages provision is enforceable if the amount is a reasonable estimate of damages for the harm caused by a breach and if the harm is incapable or very difficult to estimate accurately. The intention of the parties is often a key determinant in enforcing a liquidated damages provision.

> In determining the validity of a prepayment clause, the court must look to the damages that the parties could anticipate at the time the parties contracted. The parties are not required to make the best estimation of damages, just one that is reasonable. It is immaterial that the actual damages suffered are higher or lower than the amount specified in the clause. However, if the damages are easily calculable or the prepayment premium greatly exceeds a reasonable upper estimate of damages, that premium will be disallowed.

*Schaumburg*, 97 B.R. at 953–54 (citations omitted); *see also Pav–Saver Corp. v. Vasso Corp.*, 143 Ill.App.3d 1013, 97 Ill.Dec. 760, 493 N.E.2d 423 (1986); *Village of Rosemont v. Maywood–Proviso State Bank*, 149 Ill.App.3d 1087, 103 Ill.Dec. 542, 501 N.E.2d 859 (1986). Thus, if a liquidated damages clause does not meet the above stated requirements, it is deemed an unenforceable penalty provision, with the injured party recovering only those dam-

---

1. The loan document provides that Illinois law controls "the validity of this agreement, its construction, interpretation, and enforce- ment and the rights of the parties hereto." Loan and Security Agreement § 15.

ages established by proof pursuant to common law principles. *See Lake River Corp. v. Carborundum Co.,* 769 F.2d 1284, 1292 (7th Cir.1985) (applying Illinois law).

■ Considering the nature of the agreement in this case, Fremont's actual damages at the time of the prepayment are impossible to determine. Unlike cases involving a set loan amount, term, and interest rate (or a foreseeable range of interest rates), Lappin had a line of credit. The outstanding amount might rise and fall daily. Most borrowers maintain a substantial balance, and lenders count on that, as they make their profits by collecting interest. While the interest the lender is earning at any given moment might vary considerably, it would probably even out over time. Therefore, having a term for the line of credit, such as three years in this case, is sensible in that it allows for a rough calculation of expected profit.

Because of the likelihood of considerable fluctuation, and the possibility of manipulation by the borrower, the outstanding amount at the time of termination is not necessarily a fair measure of damages over the term of the contract. The borrower could pay down the balance right before termination, substantially reducing the termination fee, but the lender's loss of the interest it expected to earn over the remainder of the contract should not be reduced. Thus, the Advance Limit is a reasonable factor to be used in calculating the prepayment charge. The percentage to be applied is small, thereby taking into consideration the possibility that the amount borrowed might not be at the maximum for a significant period of the contract. Also, a sliding scale is used as time goes on, taking into consideration the decrease in future lost profits as the end of the term of the contract nears. Taken as a whole, the termination fee contracted for by the parties is a reasonable calculation of potential damages, and it meets the requirements of Illinois law.

In addition to the requirements of Illinois law, the early termination clause must meet the reasonableness standard under Bankruptcy Code § 506(b). Bankruptcy courts have taken various approaches to determining reasonableness of the prepayment charge under § 506(b). Some courts have held that § 506(b) should be construed to limit the lender's recovery to only actual costs, charges, and fees. *In re Imperial Coronado Partners, Ltd.,* 96 B.R. 997, 1001 (9th Cir. BAP 1989); *Kroh Bros.,* 88 B.R. at 1001; *Morse Tool,* 87 B.R. at 750; *In re American Metals Corp.,* 31 B.R. 229 (Bankr.D.Kan.1983). In *Coronado,* 96 B.R. at 1001, the court recognized that prepayment fees are intended to protect lenders from a decline in interest rates between the date the loan was made and the date of the prepayment, and that the lender may have a contractual right to collect the full amount of the prepayment fee under nonbankruptcy law. Nevertheless, the court held that, under § 506(b), the lender was only entitled to collect the difference between the market rate of interest on the prepayment date and the contract rate for the remaining term of the loan. *Id.; see also In re Duralite Truck Body & Container Corp.,* 153 B.R. 708 (Bankr.D.Md.1993) (fee allowable if charges bear reasonable relationship to lender's actual loss); *A.J. Lane & Co.,* 113 B.R. 821 (actual damages approach).

■ As attractive a concept as actual damages is, they are impossible to calculate in a line of credit situation. Furthermore, this court is in agreement with a majority of courts that view a prepayment charge as liquidated damages, not as unmatured interest or an alternative means of paying under the contract. *See, e.g., United Merchants and Mfrs., Inc.,* 674 F.2d 134; *Direct Transit,* 226 B.R. 198; *In re Financial Center Assocs. of East Meadow, L.P.,* 140 B.R. 829 (Bankr.E.D.N.Y. 1992). In this case, the charge is independent of the amount owed at termination, thus negating any characterization as interest.

Additionally, the amount charged is not so large as to be considered a penalty

rather than damages. For instance, in *Anchor Resolution Corp.*, 221 B.R. at 341, the court found that the amount of the prepayment premium, as a percentage of principal (6.9%), was not a penalty, in terms of both the formula used to calculate the amount of the premium and the amount as a percentage of the principal. In that case, the prepayment formula accounted for changes in the Treasury rate, decreased over time, and had no minimum charge.

On the other hand, the bankruptcy court in *Kroh Bros.*, 88 B.R. 997, held that the prepayment formula was unreasonable. The court in *Kroh Bros.* seemed particularly concerned that the prepayment charge, when computed in accordance with the lender's contractual formula, equaled 25% of the principal amount of the loan, which the court felt was an exorbitant "penalty." The court concluded that § 506(b) should be construed narrowly and that, at most, a 10% prepayment charge could be considered reasonable. *Id.* at 1002; *but see Financial Center Assocs. of East Meadow, L.P.*, 140 B.R. at 839 (rejecting *Kroh Bros.* and concluding that a 25% charge was high but not unreasonable).

The *Financial Center* court viewed the reasonableness standard of § 506(b) as a safety valve to be used cautiously, but it should be noted that unsecured creditors were receiving a substantial dividend, which the court viewed as significant. This court has already concluded that the use of the Advance Limit is a more reasonable factor to use in calculating future damages than the amount outstanding at termination. However, comparing the result in this case to percentages of the outstanding balance is a useful check. The early termination fee of $225,000 represents approximately 5.9% of the principal loan amount of $3,772,046. This fee, therefore, is not disproportionately large in relation to the actual amount due by Lappin.

The parties in this case agreed upon a liquidated damages provision on a sliding scale percentage of the Advance Limit when they entered into their lending arrangement. They were sophisticated parties and represented by competent counsel. The transaction was entered into voluntarily and at arm's length. This formula is a reasonable calculation of liquidated damages for early termination. The creditor is entitled to the benefit of its bargain. Because the early termination fee is enforceable under Illinois law and reasonable under 11 U.S.C. § 506(b), as a matter of law, summary judgment is granted in favor of Fremont Financial and denied the trustee.

A prior order has been entered in this case.