In re **KROH BROTHERS DEVELOP-MENT COMPANY, Kroh Brothers Realty Company, 8880 Ward Parkway Associates, Kroh Investments I, Inc.,** Debtors.

Bankruptcy Nos. 87–00640–1–11, 87–00641–1–11, 87–00643–1–11, 87–01263–1–11.

United States Bankruptcy Court, W.D. Missouri, W.D.

Aug. 25, 1989.

Thomas M. Franklin, Polsinelli, White, Vardeman & Shalton, R. Pete Smith, McDowell, Rice & Smith, Kansas City, Mo., for Kroh Bros. Development Co. and all related debtors.

Edward E. Schmitt, Armstrong, Teasdale et al, Kansas City, Mo., for Segregated Fund Trustee.

Thomas S. Kiriakos, Mayer, Brown & Platt, Chicago, Ill., for Creditor's Committee.

Lloyd A. Palans, St. Louis, Mo., for Cowen 8880 interests.

Mark S. Lieberman, Rosenthal & Schanfield, Chicago, Ill., for Mut. Benefit.

MEMORANDUM OPINION AND ORDER ON REMAND OF MOTION BY MUTUAL BENEFIT LIFE INSURANCE FOR PAYMENT OF ATTORNEYS' FEES AND EXPENSES AND ORDER ON SUPPLEMENTAL MOTION OF MUTUAL BENEFIT LIFE INSURANCE FOR PAYMENT OF ATTORNEYS' FEES AND EXPENSES

KAREN M. SEE, Bankruptcy Judge.

The Mutual Benefit Life Insurance Company (MBL) filed a Motion for Allowance of

Interest, Fees, Costs and Other Charges on Secured Claim (the "Original Motion"). Portions of the Motion were ruled pending this court's determination whether MBL's prepayment premium, a claim in excess of $2,000,000 should be allowed as a secured claim and whether MBL's application for attorneys' fees and expenses should be granted.

The court entered its Order on August 9, 1988 denying the allowance of the prepayment premium and reducing the attorney fee request to $10,000 (the "Original Order"). *In re Kroh Brothers Development Co.*, 88 B.R. 997 (Bankr.W.D.Mo.1988). MBL appealed only the portion of the decision concerning the reduction of attorneys' fees. On appeal, the district court remanded the decision to this court because there was insufficient articulation of the manner in which the sum of $10,000 was determined.

In its Original Motion, MBL sought reimbursement of attorneys' fees in the amount of $87,968.50 for work performed and expenses incurred prior to July 31, 1987, by two law firms, herein identified as Chicago counsel for MBL and Kansas City local counsel for MBL. The services rendered allegedly included work performed during the course of MBL's attempts to segregate and account for cash collateral, obtain a lift of stay or the appointment of a trustee, obtain adequate protection payments, and other miscellaneous matters in the bankruptcy proceeding such as responding to other attorneys' requests for reimbursement of fees. Additionally, MBL sought reimbursement of attorneys' fees and expenses incurred in the sale of debtor's[1] sole asset, a five-story office building.[2]

On May 30, 1989, MBL filed a Supplemental Motion for Allowance of Attorneys' Fees Incurred After July 31, 1987 (the "Supplemental Motion"). The Supplemental Motion seeks additional attorneys' fees and expenses in the amount of $60,293.83 for legal services rendered and expenses incurred from August 1, 1987 to March 15, 1989 by Chicago counsel, Kansas City local counsel and a third firm which was also local counsel in Kansas City. These legal services fall roughly into four categories: first, those relating to the sale of the property; second, those relating to recovery of MBL's claims on its Original Motion; third, those relating to the appeal of the attorneys' fee decision on the Original Motion; and fourth, those relating to miscellaneous bankruptcy matters.

The Supplemental Motion was opposed by a number of interested parties, collectively referred to as Respondents.[3] Respondents filed a Joint Response in which they contend that the only reasonable fees for which MBL can be reimbursed are those relating to the sale of the property and collecting the post-petition interest. Respondents contend fees relating to the prepayment premium issue, appeal of this court's Original Order and monitoring this bankruptcy proceeding are unreasonable and therefore not compensable under 11 U.S.C. § 506(b).

The court has engaged in further extensive review of MBL's Original Motion and has also extensively reviewed MBL's Supplemental Motion. Based on such review, the court makes the following findings and conclusions. To the extent that these findings and conclusions contradict any oral comments or findings made in the court's Original Opinion or on the record, these findings and conclusions supersede those comments and findings.

## LEGAL STANDARDS

The requests for reimbursement of attorneys' fees in the Original and Sup-

1. The debtor referred to in this opinion is 8880 Ward Parkway Associates.

2. The facts of this case are more fully set forth in *In re Kroh Brothers Development Co.*, 88 B.R. 997 (Bankr.W.D.Mo.1988).

3. Respondents include the debtor; Cowen 8880 Investors Company, the debtor's limited partner (Cowen); and three entities related to the debt-

or, Kroh Brothers Development Company, Kroh Brothers Realty Company, and Kroh Investments I, Inc. These latter entities, as well as other entities related to the Kroh Brothers Development Company are referred to in this opinion as the "Kroh related entities." Their bankruptcy proceedings are referred to in this opinion as the "Kroh related bankruptcies."

plemental Motions must be reviewed in the context of the following legal standards. First, in determining whether a secured creditor should be reimbursed for its attorneys' fees, the bankruptcy court has the responsibility of preventing overreaching by attorneys in their attempts to be paid attorneys' fees from the estate. *In re N.S. Garrott & Sons,* 54 B.R. 221[1] (Bankr.E. D.Ark.1985). The bankruptcy court must therefore conduct an independent review to investigate the reasonableness of the compensation requested. *In re Curtis,* 70 B.R. 712, 713[2] (Bankr.E.D.Ark.1987); *Garrott & Sons,* 54 B.R. 221[2] *and cases cited therein.* The court must also consider the public interest inherent in awarding attorneys' fees in bankruptcy cases: "An allowance is the result of a balance struck between moderation in the interest of the estate and its security holders and the need to be generous enough to encourage lawyers and others to render the necessary and exacting services that bankruptcy cases often require." *In re Henning,* 55 B.R. 682, 694[1] (Bankr.D.S.D.1985); *In re Erewhon,* 21 B.R. 79, 80–1[1] (Bankr.D. Mass.1982).

For these reasons, the court has discretion in determining the amount of attorneys' fees to be awarded. *In re McCombs,* 33 B.R. 387, 388[1] (E.D.Mo. 1983) *aff'd* 751 F.2d 286 (8th Cir.1984). This discretion is very broad. *In re Benassi (Seiler v. First National Bank of Babbitt),* 72 B.R. 44, 46[1] (D.Minn.1987); *Matter of Scarboro (ITT Industrial Credit Co. v. Scarboro),* 13 B.R. 439, 443[5] (M.D.Ga. 1981). The award may be reversed only on a showing that the bankruptcy judge abused its discretion. *Benassi,* 72 B.R. at 46[1]. Further, "the court ... is itself an expert on the question (of attorneys' fees) and may consider its own knowledge and experience concerning reasonable and proper fees and may form an independent judgment either with or without the aid or

testimony of witnesses as to value." *Erewhon,* 21 B.R. at 81[3], *quoting In re TMT Trailer Ferry, Inc.,* 577 F.2d 1296, 1304 (5th Cir.1978). Also, the court may award less than the amount contracted for between the parties.[4] *Matter of Lane Poultry of Carolina, Inc.,* 63 B.R. 745, 750[2, 3] (Bankr.M.D.N.C.1986).

An abuse of the bankruptcy court's discretion in determining a fee award occurs only when the bankruptcy court fails to use the proper legal standard and procedure in making the fee determination or bases its award on clearly erroneous findings. *McCombs,* 33 B.R. at 388[3], *citing Matter of U.S. Golf Corp. (Neville v. Eufaula Bank & Trust Co.),* 639 F.2d 1197, 1201[1] (5th Cir.1981); *In re Doyle–Lunstra Sales Corp. (Blake v. Doyle),* 19 B.R. 1003, 1006[5] (D.S.D.1982). Thus, a fee award will be altered only if the bankruptcy court fails to apply the proper legal standard and procedure or when the award was based on clearly erroneous findings. *Benassi,* 72 B.R. at 46[1].

Second, an oversecured creditor such as MBL may seek reimbursement for its attorneys' fees under § 506(b) of the Bankruptcy Code, which provides:

To the extent that an allowed secured claim is secured by property the value of which, after any recovery under subsection (c) of this section, is greater than the amount of such claim, there shall be allowed to the holder of such claim ... any reasonable fees, costs, or charges provided for under the agreement under which such claim arose.

11 U.S.C. § 506(b). The applicant has the burden of proving the reasonableness of its request for compensation. *Garrott & Sons,* 54 B.R. at 222[3] *and cases cited therein. See also Curtis,* 70 B.R. at 713[1].

Here, there is no dispute that MBL is oversecured and that its agreement with the debtor provides for attorneys fees in-

---

**4.** The court notes that in approving a reimbursement of attorneys' fees under § 506(b), a bankruptcy court is only approving the amount of fees that can be paid to the creditor from the estate. Thus, a bankruptcy court's disallowance of a fee request does not deprive counsel from collecting the balance of the fees from the creditor.

curred in the collection of its note.[5] Courts have interpreted such agreements as permitting recovery "for such services and expenses as were reasonably necessary to enforce the debtor's obligations and to collect the amount remaining due pursuant to obligations." *In Re Continental Vending Machine Corp. (James Talcott, Inc. v. Wharton),* 543 F.2d 986, 994 (2nd Cir.1976). However, in applying this standard, courts must observe a "rule of reason" to avoid such clauses "becoming a tool for wasteful diversion of an estate at the hands of secured creditors who, knowing that the estate must foot the bills, fail to exercise restraint in enforcement of expenses. While the criterion must, of necessity, be a general one, and it leaves much to the discretion of the trial judge, it does provide a workable standard." *Continental Vending,* 543 F.2d at 994.

Thus, an oversecured creditor is not entitled to compensation for its attorneys' fees for *every* action it takes by claiming that its rights have been affected: "[I]t is clear that creditors are entitled to engage counsel and pay for constant, comprehensive, and aggressive representation, ... [but] where services are not reasonably necessary or where action is taken because of an attorney's excessive caution or overzealous advocacy, courts have the right and the duty, in the exercise of their discretion, to disallow fees and costs under § 506(b)." *In re Wonder Corp. of America,* 72 B.R. 580, 591[9] (Bankr.D.Conn.1987) *aff'd* 82 B.R. 186 (D.Conn.1988).

"Reasonable" fees under § 506(b) are as those necessary to the collection and protection of a creditor's claim. *In re Reposa,* 94 B.R. 257, 261[6] (Bankr.D. R.I.1988). They may include seeking adequate protection and participation in the bankruptcy proceeding until the collateral is sold, a plan is confirmed or the case is converted or dismissed. *Matter of Nicfur–Cruz Realty Corp.,* 50 B.R. 162, 167–68 (Bankr.S.D.N.Y.1985). It is inherently un-

reasonable, however, to seek reimbursement for fees "that are not cost justified either by the economics of the situation or necessary to preservation of the creditor's interest in light of the legal issues involved." 50 B.R. at 169[13].

The court in *Wonder Corp.* set forth a number of factors that a court may consider in determining the reasonableness of fees under § 506(b). Those factors are: (1) whether the legal services are authorized by the loan agreement; (2) whether the legal services are necessary to promote the client's interest; (3) whether the legal services are permitted under applicable law, including the Bankruptcy Code; (4) whether the legal services are compatible with bankruptcy policy as derived from relevant provisions of the Bankruptcy Code and the judicial decisions which construe it; (5) whether the time spent is appropriate to the complexity of the task; (6) whether the hourly rate is appropriate under applicable bankruptcy standards; (7) whether the task has been assigned to the fewest and least possible senior attorneys able to render the service in a competent and efficient manner; (8) whether the fee should be adjusted to reflect duplicative services rendered by attorneys representing other parties with a common interest in the case; and (9) whether the fee should be adjusted to reflect the court's observation of the nature of the case and the manner of its administration. *Wonder Corp.,* 72 B.R. at 588–87[7].

This court found no authority within the Eighth Circuit requiring application of these factors to requests by an oversecured creditor for reimbursement of its attorneys' fees. However, the court notes that the first eight factors appear to be related to the moving creditor's burden of proving either that the fees are "reasonable" under § 506(b) or that the content and specificity requirements have been met. The ninth factor is relegated to the court's discretion. Thus, review of a creditor's fee application in the context of the ninth factor is neces-

---

**5.** In its original Order the court found that the portion of the note providing for payment of attorneys' fees was not ambiguous and clearly provided for payment of the costs of collection

when collection occurs in bankruptcy. *See Kroh Brothers Development Co.,* 88 B.R. at 1003[4].

sary only when the burden of proof has been sustained and then only if, in the court's opinion, some adjustment should be made.[6]

■ In addition to the mandate in § 506(b) that the fees be reasonable, the requirements of § 330(a)(1) must also be met. *Erewhon,* 21 B.R. at 81. Section 330(a)(1) allows "reasonable compensation for actual, necessary services rendered ... based on the nature, the extent, and the value of such services, the time spent on such services, and the cost of comparable services other than in a case under this title."

■ To determine whether compensation requested is reasonable and the services rendered were actual and necessary, courts have required that the fee application be of certain content and specificity. "Adequate time records are essential to the court in carrying out its duty to determine how much work was productive or necessary, and how much work required treatment by experienced attorneys...." *In the Matter of Interstate Stores, Inc.,* 437 F.Supp. 14, 16 (S.D.N.Y.1977), *cited in Doyle–Lunstra,* 19 B.R. at 1005. Thus, when itemization of work performed is not sufficiently specific to identify the services rendered, the charges for those services will be disallowed. *In re Curtis,* 70 B.R. at 716. For these reasons, courts have required that the purpose, nature and substance of telephone calls, conferences, legal research, court appearances, depositions and preparation for court appearances or depositions be stated. *In re Wiedau's, Inc.,* 78 B.R. 904, 908[3, 4, 6, 7] (S.D.Ill. 1987). *See also Doyle–Lunstra,* 19 B.R. at 1007. An applicant may not circumvent the requirements of detail by "lumping" a number of activities into a single entry. *Wiedau's, Inc.,* 78 B.R. at 908[8]. "Each

type of service should be listed with the corresponding specific time allotment." *Id.* When several services are grouped into one billing entry, the court cannot properly estimate the reasonableness of the individual services and their value to the estate. *Wiedau's,* 78 B.R. at 908[8]; *In re Curtis,* 70 B.R. at 716, *citing In re Bishop,* 32 B.R. 302 (Bankr.D.R.I.1983).

Additionally, many courts in the exercise of their discretion do not compensate for time spent preparing fee applications. *In re Curtis,* 70 B.R. at 716[6]; *Garrott & Sons,* 54 B.R. at 224, *citing Matter of Liberal Market, Inc.,* 24 B.R. 653, 661 (Bankr.S.D.Ohio 1982); *In re Citizens Mortgage Investment Trust (CMIT),* 37 B.R. 813, 820 (Bankr.D.Mass.1984); *In re ABSCO, Inc.,* 23 B.R. 250, 252 (Bankr.E.D. Pa.1982); *In re Pacific Homes,* 20 B.R. 729, 738 (Bankr.C.D.Cal.1982).[7]

With the above legal standards in mind, the court now turns to the question whether and in what amount the estate should reimburse MBL for its attorneys' fees and expenses.

## THE ORIGINAL MOTION

Some background information concerning this debtor and the other Kroh related bankruptcies may be helpful before this court turns to the merits of the Original Motion. Kroh Brothers Development Company (KBDC) and at least 15 of its related entities filed petitions in Chapter 11 on February 13, 1987. Between 15 and 20 additional Kroh related bankruptcies were later filed. Chicago counsel represented MBL's interests in eight commercial properties held by bankrupt Kroh related entities.

In its Original Motion, MBL requested reimbursement of attorneys' fees for ser-

---

**6.** Likewise, a number of courts use the guidelines set forth in *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714 (5th Cir.1974) in ruling on fee applications in bankruptcy. *See Doyle–Lunstra,* 19 B.R. at 1005[3]. These factors were approved by the Eighth Circuit in *Cleverly v. Western Electric Co.,* 594 F.2d 638, 642 (8th Cir.1979) for use in age discrimination cases. As with the factors enumerated in *Wonder Corp., supra,* the *Johnson* factors become

relevant only after the creditor has sustained its burden of proof and then only if, in the court's opinion, some adjustment should be made.

**7.** *But see Rose Pass Mines, Inc. v. Howard,* 615 F.2d 1088, 1093 (5th Cir.1980); *In re United Rockwool, Inc.,* 32 B.R. 558, 561 (Bankr.E.D.Va. 1983).

vices performed and expenses incurred by the Chicago firm and the Kansas City firm. The discussion of attorneys' fees in the Original Motion was limited to the following:

The attorneys fees in the amount of $85,-165.91 [sic] and the appraisal fee in the amount of $7,678.10 are reasonable in amount. The time expended and the services performed for MBL were necessary to preserve and protect MBL's lien upon and interest in the Property. Statements for the legal fees of [Chicago counsel and Kansas City counsel] through July 31, 1987, as well as the statement of the Appraiser Don C. Peete & Associates, Inc. have been filed with the court and are also available for inspection at the offices of [Kansas City counsel].

Original Motion at para. 12, p. 6. Also accompanying the Original Motion was the Affidavit of John D. Master, Second Vice President of MBL. The Affidavit stated only that MBL retained the Chicago firm and the Kansas City firm, had received and paid certain invoices and had received and would pay other invoices from the Chicago firm and the Kansas City firm.

In addition to the Original Motion and Affidavit, the court had before it the following documents in support of MBL's Original Motion prior to entering its Original Order: MBL's brief in support of the Original Motion, counsels' time sheets and the Affidavit and Supplemental Affidavit of an attorney of the Kansas City firm. The brief in support of the Original Motion discussed only the postpetition interest and prepayment premium issues.

The Original Motion was insufficient in a number of respects. It did not include a list of the attorneys or other professionals working on this matter. It did not indicate the hourly rate charged by those persons. It did not give any explanation of the general categories of legal services rendered and the reasonableness and necessity of those services to the collection of MBL's claim. It did not explain whether or how

time charged to apparently unrelated matters had been removed from the request. It did not explain what efforts had been taken to avoid duplication of effort between counsel and local counsel. It made no effort to explain why three MBL attorneys appeared at most of the proceedings before this court.

At the hearing on the Original Motion Chicago counsel attempted to explain the allocation process used by the firm in allocating fees and expenses to this estate.[8] Although the allocation process for the January invoice was explained, the court still found the explanation of the allocation process for the remaining invoices inadequate and indicated that it could not render a decision based on the records as submitted. Accordingly, the court directed counsel to resubmit their time records and include only the items that related solely to this matter and to exclude all other items. Counsel refused to do so.

At that hearing the court also gave counsel, at the request of Chicago counsel, leave to file affidavits further explaining the fees requested. Chicago counsel refused to do so. Kansas City local counsel filed the Affidavit and Supplemental Affidavit previously mentioned. Those affidavits set forth the rates charged by each billing attorney at the Kansas City firm and stated that no fees or expenses for work on property other than 8880 property had been charged. The Affidavit also explained the allocation process, counsel's sensitivity to duplication of efforts and the necessity of negotiations, discovery and the appearance of three attorneys at various hearings and meetings.

Based on this scant and totally unhelpful record, the court entered its Original Order disallowing the prepayment premium and limiting reimbursement of the fees requested to $10,000. MBL chose not to appeal the portion of the opinion disallowing the prepayment premium. Instead, it appealed the attorney fee award. In doing so, it compiled 10 volumes of documents, all

---

**8.** Chicago Counsel repeatedly insists that an explanation of the allocation process for that firm was set forth in the Affidavit of John D. Master filed with its Original Motion. The court found no such explanation in the Affidavit on file in this proceeding.

from this court's files in this and other Kroh related bankruptcies, a 40 page appellate brief and a 15 page reply brief.

On June 12, 1989, more than three months after the Original Order was remanded to this court, counsel for MBL finally submitted a brief in support of its Original Motion for attorneys' fees. The brief set forth the billing attorneys, their hourly rates, an understandable basis for the allocation of time, and an explanation of the legal services rendered. That brief was 20 pages in length. Shortly thereafter, on June 27, 1989, counsel submitted an additional 18 page brief in support of both the Original and Supplemental Motions. Although the June 12 brief does serve to assist the court in its review of some of the time records accompanying the Original Motion, time records comporting to the court's previous instructions were not filed with either brief. A hearing on both motions was held on June 27.[9]

Thus, the court, for the third time, turns to the time records submitted in support of the Original Motion. Two years have now passed since the Original Motion was filed. MBL has expended its resources on at least 93 pages of briefing and on duplicating 10 volumes of this court's documents for purposes of appeal. Counsel for debtors, the limited partners and the Creditors' Committee have expended unknown hours and resources in attempting to respond to the Original Motion. Still, to this date, neither the Chicago nor the Kansas City counsel have submitted adequate time records to assist the court in its review.

Turning to the Chicago counsel's fees and expenses, reimbursement is sought in the following amounts:

| Invoice Date | | Fees/ Expenses | TOTAL |
| --- | --- | --- | --- |
| 1/31/87 | | $ 2,802.59 | $ 2,802.59 |
| 4/30/87 | fees | $30,749.00 | $36,114.34 |
| | exp. | 5,365.34 | |

| Invoice Date | | Fees/ Expenses | TOTAL |
| --- | --- | --- | --- |
| 5/31/87 | fees | $16,682.50 | $18,151.54 |
| | exp. | 1,469.04 | |
| 6/30/87 | fees | $ 1,097.50 | $ 2,856.49 |
| | exp. | 1,758.99 | |
| 7/31/87 | fees | $ 3,995.00 | $ 4,232.51 |
| | exp. | 237.51 | |

The amount charged to MBL on the January 31, 1987, invoice totals $30,525.85 for fees and expenses. However, only 9%, or $2,802.59, was billed to this estate. The 9% allocation was derived by comparing the total indebtedness due MBL from this debtor with the total indebtedness due MBL on other Kroh Brothers properties for which the Chicago firm served as counsel to MBL. The comparison showed that the indebtedness on this property was 9% of the total.

The court does not condone this type of allocation of fees and expenses because it makes the court's determination of reasonableness and necessity impossible. Here, the court cannot determine the reasonableness of the services performed or their necessity to MBL's interests in this proceeding. The court also notes that, as a specialist in the bankruptcy field, Chicago counsel surely is aware that attorney fee applications and § 506(b) claims must be itemized as to the particular property in question and cannot contain descriptions of work on other properties and other cases all lumped together. In drafting the fee application, counsel for MBL should have omitted matters unrelated to this estate and set forth only time billed on matters pertaining to this estate. Those actions were not taken. Accordingly, the court concludes that MBL has not sustained its burden of proof on the specificity and content requirements. Nor has it sustained its burden of proving that the 9% allocation is a reasonable fee and that the work performed was necessary to protect MBL's interests. For these reasons, the $2,802.59

**9.** The court notes that after the Original Motion was remanded counsel for MBL repeatedly requested, informally, a hearing on the Original Motion. Counsel was repeatedly told that the court would decide the remand on the record as it stood and that no further hearing would be necessary. Contrary to the court's instructions, counsel arranged for the June 27 hearing through the Clerk's Office using procedures normally reserved for hearings necessitated by the Bankruptcy Rules or directed to be held by the Court.

allocation for services performed and expenses incurred by Chicago counsel as set forth on the January invoice is disallowed.

■ The amount charged to MBL on the April 30, 1987 invoice was $30,749.00 for fees and $5,365.34 for expenses. The April 30 invoice covered services rendered from February 11, 1987, to April 30, 1987. The time records supporting this invoice contain numerous references to unrelated matters. According to MBL's June 12 brief, the time billed to MBL listed on the time sheets reflects only time actually spent on matters relating to this debtor and this bankruptcy proceeding. However, after repeated and extensive review, the court was unable to determine which of the listed matters were related and from there determine whether the time allocated to those matters was reasonable and necessary.

The time records for this period are replete with entries such as the following:

> Review, revise and complete service of emergency cash collateral motion re: Fox Hill Medical Building, including service list for consolidated cases; conf. M. Lieberman re: Motion; tele. call Paul Hoffman re: Motion and financing statement filing for Fox Hill Medical; tele. Mr. Parker re: serving Prudential; draft, review and complete notice of motions and affidavits of service; meet with MSL and Cory Lipoff re: cash collateral stips.; draft memo re: Kroh Bros. lease; draft memo to MSL re: Prudential assignment of leases at Fox Hill Medical. 1.3 hrs.
>
> Telephone call—Martin; telephone call— Peete (2); telephone call—palans (Cowen); telephone call—OGA (Chem Bank); telephone call—Lipoff; memos to file; telephone call—appraiser re West Tech; revise USAA response; revise cash collateral response; review and revise response re use and occupancy; letter to West Tech appraiser; conference Marty Blonder. . 1.7 hrs.

Entries such as the above require the court to guess which tasks related to this debtor, as opposed to the numerous other Kroh related debtors, and then decide whether the time allocated to the task was reasonable. Even as supplemented by the explanation in MBL's brief, these time records place too much of the burden on the court and none on counsel. As one bankruptcy court noted:

> The Court should not be required to indulge in guesswork, nor undertake extensive labor to justify a fee for an attorney who has not done so himself. We do not find it to be an unbearable burden to require an attorney seeking compensation to enlighten the Court as to the nature of his toil and the relation it bears to the matter at hand. Absent such a statement, compensation may not be allowed.

*In re Horn & Hardart Baking Co.*, 30 B.R. 938, 944 (Bankr.E.D.Pa.1983). Stated another way:

> [T]he Court believes that justification of [attorneys'] fees and the application for compensation is not an overly burdensome task.... The Court feels that the burden is on the attorney seeking compensation to establish the amount. The Court will not delve through the record of an extensive case, such as this one, in order to justify legal fees which counsel has not adequately documented in his application.

*In re Hotel Associates, Inc.*, 15 B.R. 487, 488 (Bankr.E.D.Pa.1981). For these reasons, the court finds that MBL has not met its burden of proof as to reimbursement of fees and expenses charged by the Chicago attorney in the April 30, 1987 invoice. Accordingly, the total amount of $36,114.34 is disallowed.[10]

■ The time records supporting the remaining invoices contain only matters relating to this estate. However, there were still a number of entries that did not conform to the specificity and content required

---

10. The court notes that its initial request that these time records be resubmitted to include only the matters relating to this estate clearly was not as burdensome as the time later expended by MBL in defending the inadequacies of the records and by this court in reviewing them.

of fee applications by §§ 506(b) and 330(a)(1). Fees relating to those entries will therefore be disallowed. Thus, the court will disallow entries where the purpose of a telephone call, letter or conference was not stated; entries in which lumping of more than one service occurred if the court could not determine that the total amount charged was reasonable; entries where no work occurred on this matter; entries in which routine or administrative tasks were performed; and entries involving work on this fee application.[11] The entries disallowed are set forth in Appendix A (which the Court has omitted from the published version of the opinion). The reason for disallowance is set forth in parentheses.

Additionally, fees and expenses for what are termed the "separate Cowen negotiations" will be disallowed as unreasonable. These negotiations occurred between MBL and Cowen, debtor's limited partner. According to the June 12 brief these negotiations focused on Cowen's proposal that MBL fund leasehold improvements to attract a new tenant after KBDC vacated the property and also "reduce the interest rate to 8% against a contribution of a $500,000 conditional letter of credit by Cowen." Brief at p. 9. At the time of these negotiations, MBL knew it was oversecured. A sale of the property had been proposed and negotiations on the sale were proceeding. To charge this estate for actions best labeled a "second line of defense" for MBL is not and was not necessary to protect its lien and amounts to overreaching. Therefore, the court will also disallow the fees and expenses related to these negotiations. MBL's June 12 brief indicates that 42 hours were expended on the Cowen negotiations. Entries reflecting 36 hours of work performed on the Cowen negotiations are set forth in Appendix A. The court was unable to identify the remaining 6 hours of work and will therefore make the additional reduction of 6 hours billed at $212 per

hour—the average hourly rate charged on the identifiable portion of the Cowen negotiations—for an additional reduction of $1,272.

The amount disallowed as set forth in Appendix A is $9,797.50. The amount disallowed on the January 31, 1987 invoice is $2,802.59. The amount disallowed on the April 30, 1987 invoice is $30,749. The additional amount disallowed for the Cowen negotiations is $1,272. Therefore, the total fees disallowed for services performed by Chicago counsel are $44,621.09. The original amount requested by MBL for Chicago counsel's fees was $55,326.59. Accordingly, the court will allow reimbursement of attorneys' fees charged to MBL by Chicago counsel in the amount of $10,705.50. Expenses pertaining to the April 30, 1987 invoice in the amount of $5,365.34 are disallowed. The original amount requested by MBL for Chicago counsel's expenses was $8,830.88. Accordingly, the court will allow reimbursement of expenses charged to MBL by Chicago counsel in the amount of $3,465.54. The total amount to be reimbursed for services rendered and expenses incurred by Chicago counsel on the Original Motion is $16,973.63.

Turning to the fees and expenses of the Kansas City local counsel firm, reimbursement is sought in the following amounts:

| Invoice Date | | Fees/ Expenses | TOTAL |
|---|---|---|---|
| 4/14/87 | fees exp. | $ 5,095.75 462.65 (allocated amount) | $ 5,558.40 |
| 5/14/87 | fees exp. | $ 5,095.75 628.98 (allocated amount) | $ 5,724.73 |
| 5/14/87 | fees exp. | $ 1,852.50 928.64 | $ 2,781.14 |
| 6/12/87 | fees exp. | $ 1,333.90 384.29 (allocated amount) | $ 1,518.19 |

---

11. *See discussion, supra* at p. 522.

| Invoice Date | | Fees/ Expenses | TOTAL |
|---|---|---|---|
| 6/12/87 | fees | $ 2,670.00 | $ 4,475.34 |
| | exp. | 1,805.34 | |
| 7/20/87 | fees | $ 1,294.55 | $ 1,597.84 |
| | exp. | 303.29 (allocated amount) | |
| 7/20/87 | fees | $ 125.00 | $ 219.29 |
| | exp. | 94.29 | |
| 8/14/87 | fees | $ 561.85 | $ 704.51 |
| | exp. | 142.66 (allocated amount) | |
| 8/14/87 | fees | $ 1,087.50 | $ 1,160.59 |
| | exp. | 73.09 | |

The time records for the Kansas City firm contain few references to the specific property for which services were rendered. The supplemental brief states that both specific services relating only to this case and general services relating to this and other MBL matters in the Kroh cases are listed. The time billed to MBL for the specific services rendered is listed. Time billed for general services rendered was allocated to this estate by comparing the total indebtedness due MBL from this debtor with the total indebtedness due MBL on other Kroh Brothers properties for which the Kansas City firm served as local counsel to MBL. The comparison showed that the indebtedness on this property was 34% of the total services rendered by the Kansas City firm on behalf of MBL in Kroh Brothers bankruptcies.

Nearly every entry on the Kansas City firm's time records contain a mixture of unrelated work, work related generally and work related specifically. Examples of these entries are set forth as follows:

Review correspondence from Mr. Lieberman re Kansas foreclosures; extended telephone conference with Mr. Wassberg re Fox Hill Medical Building; review cash collateral pleadings for Prudential on same buildings; review pleadings from Polsinelli firm; telephone conference with Ms. Kniffen re docket sheets and operating reports; telephone conference with Mr. Parker re Marine Corps and Medical Buildings. 2.25 hrs.

Review correspondence from Mr. Lieberman to Mr. Franklin re West Tech and 8880 fact stipulations; review docket sheets and operating reports on various cases; review correspondence from Mr. Lieberman re 8880 building; review pleadings from Polsinelli firm; review correspondence from Mr. Wassberg re Fox Hill Medical reinstatement; telephone conference with Ms. Jackson re status and future documents; telephone conference with Mr. Franklin re 4/22 deposition; telephone conference with Mr. Rosen re same; prepare request for production of documents; telephone conference with Mr. Doan re USAA Motion and 4/29 hearing on West Tech; review correspondence from Ms. Jackson re USAA response; arrange to file response; telephone conference with Mr. Parker re various partnership documents. 4.75 hrs.

Review correspondence from Mr. Ahern re Chemical Bank witnesses and documents; review pleadings from Polsinelli firm; review pleadings from unsecured creditors' committee; telephone conference with Mr. Rucker re Gazebo strategy; telephone conference with Ms. Jackson re status; office conference with Ms. Dwyer and Ms. Kniffen re deposition digests; prepare for 4/29 hearing; prepare subpoena on Mr. Martin re III; office conference with Mr. McNamara re hearing strategy and preparing subpoena; update with Ms. Jackson; telephone conference with Mr. Ness and Mr. Sterling re possible USAA settlement; review and revise deposition digests. 8.50 hrs.

Again, entries such as the above force the court to guess what is related and what is not related to this particular debtor as well as what was a general matter allocated in accordance with Kansas City counsel's bases for allocation of general matters. Thus, despite numerous readings of these records, the court is unable to determine whether many of the listed matters were general, specific, or even related to this proceeding. Without this information, the court cannot determine the reasonableness and necessity of much of the work performed. The Kansas City firm's time

records simply do not supply this court with sufficient information to determine the reasonableness of the fee request. Even as supplemented by the explanation in MBL's brief, these time records again place too much of the burden on the court and none on counsel. As previously stated, it is not this court's burden to prove counsels' fees. *See Horn & Hardart Baking Co.,* 30 B.R. at 944; *Hotel Associates, Inc.,* 15 B.R. at 488.

Accordingly, the court concludes that MBL did not meet its burden of proof as to the reasonableness of the Kansas City firm's attorneys' fees. For this reason, the court denies total reimbursement of the Kansas City counsel's fees and expenses in the amount of $23,740.03.

### SUPPLEMENTAL MOTION

■ The time records supplied by Chicago counsel, Kansas City counsel and the second Kansas City local counsel in support of the Supplemental Motion have been set forth with much more clarity than those filed in support of the Original Motion. However, there were still a number of entries that did not conform to the specificity and content requirements of §§ 506(b) and 330(a)(1). MBL therefore failed to sustain its burden of proof as to these entries and fees relating to these entries will be disallowed. These fees include entries where the purpose of a telephone call, letter or conference was not stated; entries in which lumping of more than one service occurred if the court could not determine that the total amount charged was reasonable; entries where no work occurred on this matter; entries involving routine tasks or the monitoring of proceedings and entries involving work on counsels' fee applications, including the appeal of the Original Order.

■ Additionally, Respondents objected to payment of any fees in connection with MBL's attempts to recover its prepayment premium. Respondents argue that MBL received the entire amount of its principal, prepetition interest and postpetition interest and that the recovery of those sums are the only reasonable fees allowable as necessary to the protection of MBL's lien on the property. The court agrees. Additionally, it is also unreasonable to charge this estate attorneys' fees for a claim disallowed by the court. Again, the request amounts to overreaching. Accordingly, the court concludes that fees relating to the prepayment premium should be disallowed as unreasonable pursuant to § 506(b).

■ The court must then determine the allowable amount for time spent in work performed on the Original Motion. In addition to the prepayment premium and attorneys' fee issues, that Motion also sought prepetition and postpetition interest. Only the postpetition interest issue was contested. Respondents have suggested that MBL be allowed 5 hours of attorney time in the recovery of its prepetition and postpetition interest. However, in this court's opinion, the effort expended on the prepayment premium issue comprised at least 90% of the services rendered. Accordingly, based on its knowledge of the proceedings, the court will allow reimbursement for 10% of the services rendered on the Motion and disallow the remaining 90% as unreasonable under § 506(b).

■ Finally, nearly all of the services rendered after September, 1988 reflect work done on the appeal of the Original Motion. Accordingly, no expenses for those months shall be allowed.

The entries of time to be disallowed are set forth in Appendices B and C (which Appendices the Court has omitted from the published version of the opinion). The reason for disallowance is set forth in parentheses. The court notes that the time charged for the hours billed was not set forth on every time record. As to those hours, the amount billed has been calculated by the court using the hourly rates provided by counsel.

MBL seeks reimbursement of the first Kansas City counsel's fees in the amount of $12,517.50 and expenses in the amount of $880.07 for a total reimbursement of $13,397.57. The total time disallowed for the Kansas City firm because MBL either failed its burden of proof or the fees are unreasonable under § 506(b) is set forth on

Appendix B. That figure is $1,202.50. Additionally, according to the Supplemental Motion, the Kansas City firm expended 18 hours billed at $100 per hour, for a total of $1,800, on the prepayment premium, prepetition and postpetition interest issues. As previously mentioned, 90% of the time spent on this issue is disallowed as unreasonable under § 506(b). Thus, the total time disallowed for services rendered in connection with the prepayment premium issue is therefore $1,620. The Kansas City firm did not render any services on the appeal of the Original Motion. The total time disallowed for services rendered is therefore $2,822.50. No expenses are disallowed. Accordingly, MBL may be reimbursed for $9,695 in attorneys' fees and $880.07 in expenses for a total allowance of $10,575.07 for services rendered by the first Kansas City firm.

MBL seeks reimbursement of the second Kansas City firm's fees in the amount of $7,043.75 and expenses in the amount of $3,494.99 for a total reimbursement of $10,538.74. The total time disallowed for the second Kansas City firm because MBL either failed its burden of proof or the fees are unreasonable under § 506(b) is set forth on Appendix C. That figure is $5,022.50. The second Kansas City firm did not expend any time on the prepayment premium, prepetition and postpetition interest issues. However, the firm did render services on the appeal of the Original Motion. For the reasons stated above, expenses totalling $2,948.98 are also disallowed as unreasonable under § 506(b). Accordingly, MBL may be reimbursed for $2,021.25 in attorneys' fees and $564.01 in expenses for a total allowance of $2,567.26 for services rendered and expenses incurred by the second Kansas City firm.

MBL's request for reimbursement on the Chicago firm's application raises an additional problem. The original amount requested by MBL for Chicago counsel's fees was $56,213.10. However, Chicago counsel voluntarily reduced its fee request from $56,213.10 to $31,150.00, seeking compensation for only half of the work performed on the appeal and only half of the work performed on the prepayment premium issue. Unfortunately, entries such as the following frequently appear in the Chicago firm's time records:

Telephone call—Ward Katz of Tarragon Group. .20 hrs.

Review and revise section 506(b) motion; statement filing of fees; affidavit of John D. Masters; telephone conversation w/ Sharon Pauley; conference w/ MSL. .90 hrs.

On many entries, Chicago counsel either failed to identify subject matter or lumped entries containing unidentified subject matter with work on items to be totally or partially disallowed, including work on fees, work on the appeal, work on apparently unrelated matters [12] and work on the prepayment issue. It is impossible for this court to disallow fees on an entry-by-entry basis. To do so would either result in a double disallowance or an insufficient disallowance. Therefore, the court will resort to the categories set forth by MBL in its Supplemental Motion.

First, MBL expended 58 hours in connection with the sale of the property and obtaining the proceeds of the sale. Of these hours, 4.4 were expended in obtaining a wire transfer of the postpetition interest. This occurred after the sale of the property when MBL knew that its interest in the property was fully protected. Additionally, the work was performed by a senior attorney billing from between $225 and $240 per hour and an associate billing from between $125 and $130 per hour. No explanation was given why these services, which amount to an administrative matter, were not performed by a paralegal. Accordingly, the court concludes that these fees are unreasonable and unnecessary un-

12. The court's familiarity with the interested parties in a bankruptcy proceeding usually enable the court to review time records to gain an understanding of the events between the parties. The Chicago firm's time records, however, contain several references to persons and entities of whom the court has no knowledge. For example, neither Ward Katz nor the Tarragon group mentioned in the above example are entities familiar to the court in this or any other Kroh related proceeding.

der § 506(b). Therefore, these hours will be disallowed. The average hourly rate for Chicago attorneys cited in the Supplemental Motion is $140. The fees related to the wire transfer will be disallowed at that rate producing a total disallowance of $616.

Second, Chicago counsel expended 131.2 hours on the prepayment premium, prepetition interest and postpetition interest issues. As previously stated, 90% of that time is disallowed as unreasonable under § 506(b). Thus, 118.08 hours will be disallowed at a rate of $140 per hour for a total disallowance of $16,531.20.

Third, Chicago counsel expended 152 hours on the appeal of the Original Motion. For the reasons set forth above, all of those hours will be disallowed at the rate of $140 per hour for a total disallowance of $21,280.

As mentioned above, the total fee for services rendered by Chicago counsel to MBL was $56,213.10. Additionally, MBL seeks reimbursement expenses in the amount of $5,207.52. Attorneys' fees in the amount of $38,427.20 will be disallowed for the reasons set forth above. Expenses relating to work performed on the appeal will be disallowed in the amount of $1,594.97 for the reasons set forth above. Accordingly, MBL may be reimbursed for $17,785.90 in attorneys' fees and $3,612.55 in expenses for a total allowance of $21,-398.45 for services rendered by the Chicago firm.

▇▇▇ MBL has strongly contested any reduction of fees for time spent on preparing the fee applications for all three law firms as well as the time spent on the appeal of this court's Original Order. This court notes, first, that it does not and has not awarded fees for time spent preparing fee applications because it simply disagrees with those decisions in which fees have been awarded for the time spent preparing attorneys' fees applications. The court has not, in this, any other Kroh related proceeding, or any non-Kroh case, awarded attorneys' fees for preparation of fee applications. Additionally, time spent preparing fee applications is analogous to time spent preparing a bill for clients on nonbankrupt-cy matters. Attorneys do not bill a client for time spent reviewing time records to achieve a final bill. Such costs should be absorbed by counsel as overhead.

▇▇▇ Alternatively, the fees requested for the appeal of the Original Order, should be denied as unreasonable under § 506(b). The court therefore makes the following findings and conclusions. As mentioned previously, neither the Chicago nor the Kansas City firms submitted adequate time records in support of their Original Motion. Had they done so, MBL might have completely avoided the appeal. However, counsel refused to follow this court's directive to file adequate time records. Next, upon entry of this court's Original Order reducing the fees requested, counsel could have filed a motion for reconsideration and supplied the court with the information required for this court's review. Instead, counsel chose to appeal the decision. The record on appeal consisted of the entire case file in this bankruptcy proceeding and every fee application filed in the Kroh related cases. Thus, there were 10 volumes of documents in the record on appeal. All of those documents are part of this court's own records. As a result, both the Chicago lead counsel and Kansas City local counsel expended considerable effort and expense in obtaining, duplicating, and indexing those documents for purposes of the appeal. Further, as previously mentioned, MBL, alone, submitted 55 pages of briefing.

Moreover, countless hours of Respondents' time and resources have been expended on this issue. Countless hours of the court's time has also been expended on this issue. The court has attempted to review the time records submitted with the Original Motion on at least three different occasions. Each occasion involved numerous readings of the briefs and affidavits on file at the time in an attempt to glean an explanation of the manner in which time was billed.

There is no doubt that if counsel had expended the same amount of time in supplying this court with adequate time records as was expended in preparing for the appeal, MBL, Respondents and the

court could have been saved an incredible amount of time. The court simply will not condone the filing of an inadequate fee application followed by a refusal to obey court directives by rewarding the result of such actions—a reduction in the fee award—with compensation for fees spent on appealing the reduction. Such a result is particularly repugnant in' view of the fact that MBL had a less time consuming and more efficient, expedient and economical manner to pursue obtaining a change in the fee award. As the court in *Matter of Nicfur–Cruz Realty* stated, it is inherently unreasonable to seek reimbursement for fees "that are not cost justified either by the economics of the situation or necessary to preservation of the creditor's interest in light of the legal issues involved." 50 B.R. at 169[13].

Accordingly, for the above reasons, the court alternatively holds that the fees relating to the appeal of this court's Original Order are patently unreasonable within the purview of § 506(b) and for that reason, alone should be disallowed.

For the reasons set forth in this opinion, it is therefore

ORDERED that MBL shall be reimbursed for its attorneys' fees and expenses in the following amounts:

1. $14,171.04 for services performed and expenses incurred by Chicago counsel prior to July 31, 1987.

2. The fees and expenses for services performed and expenses incurred by the first Kansas City local counsel prior to July 31, 1987 are totally disallowed.

3. $21,398.45 for services performed and expenses incurred by Chicago counsel after July 31, 1987.

4. $10,575.07 for services performed and expenses incurred by the first Kansas City local counsel after July 31, 1987.

5. $2,567.26 for services performed and expenses incurred by the second Kansas City local counsel after July 31, 1987.