In re Peter HUHN and Kathy Huhn, Debtors.

Edward F. SOLOMON, Appellant,

v.

Jack C. WEIN, Trustee; and Comerica Bank, Appellees.

Bankruptcy No. SL 89–01046.
Adv. No. SL 91–8605.
No. 1:92–CV–377.

United States District Court,
W.D. Michigan, S.D.

Sept. 22, 1992.

Michael H. Perry, Fraser, Trebilcock, Davis & Foster, P.C., Lansing, Mich., for Edward F. Solomon.

Robert F. Wardrop, II, Wardrop & Wardrop, P.C., Grand Rapids, Mich., for Comerica Bank and Jack C. Wein.

Peter J. Huhn, pro se.

Kathy Huhn, pro se.

## OPINION

ROBERT HOLMES BELL, District Judge.

Edward F. Solomon appeals from the March 31, 1992, final judgment and order of the bankruptcy court in adversary proceeding No. SL 91–8605 determining the amount of his secured claim. At issue in this appeal is the bankruptcy court's determination of the amount of attorney fees and interest allowable pursuant to 11 U.S.C. § 506(b).

### I.

This matter arises out of the Chapter 7 bankruptcy of Peter and Kathy Huhn, filed on March 22, 1989. When the bankruptcy was filed the debtors owned real property on which Michigan National Bank ("MNB") held a first and second mortgage. Comerica Bank held a third mortgage, Union Federal Savings was in fourth position, and Solomon was in a fifth position pursuant to a notice of levy recorded December 27, 1988.

Several weeks after the filing of the bankruptcy, Solomon purchased the first and second mortgage position of MNB. There was never any question that the value of the property was sufficient to ensure payment of the first and second mortgage in full upon exercise of the option to purchase or upon sale to a third party.

The property was sold on March 30, 1990. Solomon received partial payment of $290,000.00 on June 13, 1990 from the proceeds of the sale. On September 18, 1991, Solomon filed this adversary proceeding to compel final payment on the notes secured by the first and second mortgages. Solomon claimed he was due an additional $152,056.79. A hearing was held on March 27, 1992. The bankruptcy court concluded that Solomon was due $31,194.51 for the balance on his secured claim. Solomon appeals that final decision, and asserts that the bankruptcy court erred in its determination of the amount of reasonable attorney fees and in its calculation of the interest on the unpaid notes.

### II.

Solomon contends that he is entitled to recover in excess of $58,000 in attorney's fees. He contends that the bankruptcy court abused her discretion in limiting the compensable activities and in awarding fees of only $5000.00.

Section 506(b) of the Bankruptcy Code allows a holder of an oversecured claim to recover, in addition to the prepetition amount of the claim, "interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement under which such claim arose." *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 239–40, 109 S.Ct. 1026, 1030, 103 L.Ed.2d 290 (1989); 11 U.S.C. 506(b).

The bankruptcy court has broad discretion in determining the amount of attorneys' fees, and the award may be reversed only on a showing that the bank-

ruptcy judge abused its discretion. *In re Lawler*, 807 F.2d 1207, 1211 (5th Cir.1987); *In re Stoecker*, 114 B.R. 980, 983 (Bkrtcy. N.D.Ill.1990); *In re Kroh Bros. Dev. Co.*, 105 B.R. 515, 520 (Bkrtcy.W.D.Mo.1989). An abuse of discretion occurs only when the bankruptcy court fails to apply the proper legal standard and procedure in making the fee determination or bases the award on clearly erroneous findings. *Id.*

■ The burden is on the attorney claiming a fee in a bankruptcy proceeding to establish the value and the reasonableness of his services. *In re U.S. Golf Corp.*, 639 F.2d 1197, 1207 (5th Cir.1981); *In re Kroh Bros.*, 105 B.R. at 520; *In re Gillette Assoc., Ltd.*, 101 B.R. 866, 879 (Bkrtcy. N.D.Ohio 1989); *In re Mayes*, 101 B.R. 494, 497 (Bkrtcy.W.D.Mich.1988). "Since every dollar expended on legal fees results in a dollar less that is available for distribution to the creditors or for use by the debtor, this burden is not to be lightly regarded." *Id.*

■ The bankruptcy court must make an independent review of the fee petition. The court has the responsibility for avoiding waste of estate assets and preventing overreaching by attorneys in their attempts to be paid attorneys' fees from the estate. *In re Riker Industries, Inc.*, 122 B.R. 964, 970 (Bkrtcy.N.D. Ohio 1990); *In re Kroh Bros.*, 105 B.R. at 520.

In this case there is no dispute that Solomon is oversecured and that its agreement provides for attorneys fees. The bankruptcy court, however, found that the fee application was deficient in many ways, including the activities covered and the lack of documentation.

■ First, the fees are sought pursuant to the mortgage contract of MNB, which Solomon purchased after the bankruptcy was filed. The attorney billings submitted at trial include bills for work done prior to Solomon's purchase of the MNB mortgages. Since § 506(b) only allows recovery of "charges provided for under the agreement under which such claim arose", the bankruptcy court properly disallowed Solomon's

claim for attorney fees incurred prior to his purchase of the MNB mortgages.

Second, the bankruptcy court found that the fee application did not comply with the content and specificity requirements imposed by the Bankruptcy Code and the Local Rules.

■ It is well recognized that applications for attorney fees must state in detail the time spent and the nature of each discrete task performed so that the bankruptcy court can assess the reasonableness of the requested fees and costs. *In re Rubenstein*, 105 B.R. 198, 202 (Bkrtcy. D.Conn.1989); *In re Kroh Bros.*, 105 B.R. at 522; *In re Wiedau's, Inc.*, 78 B.R. 904, 907 (Bkrtcy.S.D.Ill.1987).

This requirement is codified in various statutes and rules designed to enable the court to determine whether the compensation requested is reasonable. Fee applications must comply with 11 U.S.C. §§ 328 & 330(a)(1), Bankruptcy Rule 2016(a), Local Bankruptcy Rule 14, and the August 2, 1989 Fee Guidelines adopted by the Bankruptcy Court for the Western District of Michigan. Rule 2016 requires a detailed statement of "(1) the services rendered, time expended and expenses incurred, and (2) the amounts requested." The Bankruptcy Court's Fee Guidelines which accompany Local Bankruptcy Rule 14, provide that an application for attorney fees must "itemize each activity, its date, the professional who performed the work and the time expended thereon".

■ Fee applications must be so complete so as to be self-contained and self-sufficient documents from which all, or at least most, ambiguities can be resolved. *In re PCH Assoc.*, 122 B.R. 181, 205 (Bkrtcy.S.D.N.Y.1990). Because the applicant has the burden of proof on the reasonableness of the fees, courts properly reject fee applications when the documentation is insufficient for the court to made a determination as to the reasonableness of the charges. *See, e.g., In re PCH Assoc.*, 122 B.R. at 205; *In re Riker*, 122 B.R. at 971; *In re Gillette*, 101 B.R. at 879.

■ Although some of the fees submitted by Solomon are itemized with hours and amount designated, the December 20, 1990 bill for $36,325.06, the January 18, 1991 bill for $86.72, the February 26, 1991 bill for $229.72, the March 26, 1991 bill for $511.14, and the April 22, 1991 bill for $846.90, all fail to itemize the professional who performed the work, the time expended or the hourly rate. The evidence presented is insufficient to enable the court the assess the reasonableness of the fees charged.

Solomon contends that he should have been given an opportunity to submit more detailed evidence regarding the attorney fees. Solomon's argument that he is entitled to respond to the judge's objections to his evidence was rejected by the Fifth Circuit in *In re U.S. Golf Corp.*, 639 F.2d at 1207, and must be rejected here. "Since an attorney may be awarded fees in a bankruptcy proceeding only to the extent that the hours he claims are indeed compensable as valid attorney time, it is incumbent upon the attorney to demonstrate that his hours represent work that was reasonably necessary and could not have been done by non-legal employees." *In re U.S. Golf Corp.*, 639 F.2d at 1207.

Because the December through April billings were not sufficiently detailed, Solomon failed to carry his burden in demonstrating the reasonableness of these requested fees. Accordingly, the bankruptcy court did not abuse its discretion in refusing to compensate Solomon for these services.

■ Finally, the bankruptcy court concluded that some of the fees claimed covered activities that were not reasonable given the over-secured status of Solomon's claim.

■ Pursuant to Bankruptcy code § 506(b), a secured creditor is allowed only "reasonable attorney fees". In making a fee determination, the court must consider not only the fee agreement, but the overall fairness and reasonableness of the fee under all of the circumstances. *In re K–Fab, Inc.*, 118 B.R. 240, 242 (Bkrtcy.M.D.Pa.

1990) (citing *Lund v. Affleck*, 587 F.2d 75 (1st Cir.1978)).

■ "Reasonable" fees are those necessary to the collection and protection of a creditor's claim. *In re PCH Assoc.*, 122 B.R. at 204; *In re Kroh Bros.*, 105 B.R. at 521. They include fees for those actions which a similarly situated creditor might have taken. *In re Riker*, 122 B.R. at 970.

In *In re Nicfur–Cruz Realty Corp.*, 50 B.R. 162, 169 (Bkrtcy.S.D.N.Y.1985), the court held that "it is inherently unreasonable to ask a debtor to reimburse attorneys' fees incurred by a creditor that are not cost-justified either by the economics of the situation or necessary to preservation of the creditor's interest in light of the legal issues involved." (quoted with approval in *In re Rubenstein*, 105 B.R. at 203; *In re Kroh Bros.*, 105 B.R. at 521).

■ An oversecured creditor is not entitled to compensation for its attorneys' fees for every action it takes by claiming that its rights have been affected. *In re Kroh Bros.*, 105 B.R. at 521. "[W]here services are not reasonably necessary or where action is taken because of an attorney's excessive caution or overzealous advocacy, courts have the right and the duty, in the exercise of their discretion, to disallow fees and costs under § 506(b)." *In re Riker*, 122 B.R. at 973 (quoting *In re Wonder Corp. of America*, 72 B.R. 580, 591 (Bkrtcy.D.Conn.1987), *aff'd*, 82 B.R. 186 (D.Conn.1988)).

In this case the bankruptcy court determined that the case had been overlitigated, and that some of the fees were not reasonably incurred in furtherance of protecting Solomon's secured claim in light of the fact that there was never any question that the first and second mortgage positions would be paid in full.

The bankruptcy court prefaced its opinion on attorney fees with the following:

Every once in a while parties who find themselves embroiled in a bankruptcy proceeding use the occasion to attempt a scorched-earth policy towards the other players. Angry and frustrated with financial dealings which have gone awry,

on a rare occasion a creditor, unwilling to cooperate, uses the Bankruptcy Court as its own personal, although not private, battle field. And in the process of waging battle, they often end up losing sight of the purpose of the fight.

This is exactly what appears to have happened here. (Tr. p. 180). Despite the fact that it was clear Solomon's first and second mortgages would be paid in full, and that Solomon would receive nothing on its fifth position, "a new set of constant skirmishes erupted whereby Solomon and U.S. Auto were either fighting Sundance and Terry Hanks, the trustee or, as here, Comerica and the trustee." (Tr. p. 182). An oversecured creditor who seeks to recover fees is not entitled to continue to wage battle on every front, regardless of the security of its position. (Tr. p. 184).

The bankruptcy court held that it was appropriate for Solomon to file a motion for lift of stay, to defend that motion, to file a motion to reconsider, and to seek abandonment of the property. (Tr. p. 184–85). The bankruptcy court found that these activities, however, would not under any circumstances exceed a cost of $5000.00 based on the evidence presented.

The bankruptcy court is more familiar with the actual services performed and has a far better means of knowing what is just and reasonable than a reviewing court can have. *In re Lawler*, 807 F.2d at 1211. Reviewing courts "have long recognized the importance of the bankruptcy judge's closeness to issues raised in an application for attorneys fees; the bankruptcy judge has not only presided over the evidentiary hearing, but has also had the opportunity to observe the performance of the attorney throughout his employment before the bankruptcy court. Consequently, a bankruptcy judge has wide discretion in the awarding of attorneys fees." *In re U.S. Golf Corp.*, 639 F.2d at 1207–1208.

After a review of the testimony and written documentation submitted into evidence at the time of the adversary proceeding, this Court is satisfied that the bankruptcy court's fee award is supported by the evidence and does not represent an abuse of discretion. Accordingly, the bankruptcy court's ruling on attorney fees is affirmed.

### III.

■ Solomon also alleges error in the bankruptcy court's computation of the interest award. Solomon contends that the bankruptcy court erred by refusing to compound interest on the first mortgage note and by refusing to award interest on the unpaid balance of the secured claim after April 13, 1990.

The first mortgage note provided for interest to be charged on "any indebtedness". Accordingly, Solomon's agent, Jeffrey Poorman, testified at trial that he calculated interest on the outstanding loan balances, including interest on any late fees, attorney fees or prior charges that were due and unpaid as of the date of the next payment.

The bankruptcy court rejected Solomon's accounting methods. The court held that the unrebutted evidence indicated that it was not the normal accounting practice of a bank to compound interest. Accordingly the bankruptcy court allowed only simple interest on the principal balance.

The bankruptcy court did not err when it rejected Solomon's accounting methodology. Solomon is bound by the claim as it existed on the day the bankruptcy was filed. That claim consisted of the first and second mortgages held by MNB. Accordingly, the relevant issue is how MNB would calculate the amount due, not how Solomon calculated it. Solomon came forward with no evidence on how MNB would have calculated the amount due. The unrebutted evidence presented by Comerica was that banks did not normally compound interest. Accordingly, the evidence supported the bankruptcy court's decision not to compound interest.

■ Solomon contends that the bankruptcy court also committed clear error by refusing to award interest after April 13, 1990.

The bankruptcy court determined that Solomon could have submitted an acceptable accounting of the indebtedness owed

to it at or prior to the closing of the sale of the property on March 30, 1990. Allowing an additional two weeks for resolution of post-closing matters, the bankruptcy court concluded that by April 13, 1990, the balances owing on the first and second mortgages could have been paid in full. The bankruptcy court held that the only reason this did not in fact occur was Solomon's unreasonable conduct in refusing to supply an accounting that conformed to generally accepted practices. (Tr. p. 187). Accordingly, the bankruptcy court did not allow interest from April 13, 1990, forward. (Tr. p. 187).

Section 506(b) provides that a creditor "shall" be allowed interest on his claim. Moreover, Solomon points out that unlike the "fees, costs or charges" provision of § 506(b), the interest provision is not subject to the reasonableness limitation. *Matter of 268 Ltd.*, 789 F.2d 674, 676 (9th Cir.1986). Accordingly, he claims, he is entitled to interest until the notes were paid in full in accordance with the terms of the contract. He contends that it was clear error for the bankruptcy court to deny him his right to interest under the contract.

Creditors have rights, including the right of oversecured creditors to post-petition interest. *Matter of Lapiana*, 909 F.2d 221, 223–24 (7th Cir.1990). Although the Seventh Circuit has cautioned that courts are not empowered to arbitrarily dissolve rights in the name of equity, it nevertheless noted that the imperative language of § 506(b) does not extinguish all defenses. The creditor's right to post-petition interest is still subject to equitable defenses such as estoppel. *Id.*

In this case the bankruptcy court found that Solomon's claim could have been paid as early as April 13, 1990, and that the delay in payment was due to Solomon's failure to give a clear and accurate accounting. This finding is supported by a comparison of the accountings submitted by Solomon with the testimony of Roxanne Mathers and James Higgins. (Tr. pp. 87 & 152). The bankruptcy court's refusal to allow Solomon to profit when its actions directly caused the delay is an equitable

decision based upon the special facts and circumstances of this case. The decision is not contrary to the law and the Court finds no basis for reversal.

## IV.

For the foregoing reasons, this Court affirms the bankruptcy court's order of March 31, 1992, and dismisses this appeal in its entirety. An order consistent with this opinion will be entered.